UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CORNWALL MANAGEMENT LTD and OLEG SOLOVIEV a/k/a OLEG VALENTINOVICH SOLOVIEV,<br><br>                              Plaintiffs,<br><br>               -against-<br><br>THOR UNITED CORP. a/k/a THOR UNITED CORPORATION, JOHN DOE THOR ENTITIES, ATLANT CAPITAL HOLDINGS, LLC, OLEG BATRACHENKO a/k/a O.V.BATRACHENKOV, PETER KAMBOLIN, NORTH 3RD DEVELOPMENT, LLC, and ABRAHAM BENNUN,<br><br>                              Defendants. | 12 CIV 08551 (LLS) |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ABRAHAM BENNUN'S AND NORTH 3RD DEVELOPMENT, LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT

---

OLSHAN FROME WOLOSKY LLP
*Attorneys for Defendants*
*Abraham Bennun  and*
*North 3rd Development, LLC*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

Defendants North 3rd Development, LLC ("North Third Development") and Abraham Bennun ("Bennun"), by their attorneys, Olshan Frome Wolosky LLP, submit this memorandum of law in support of their motion to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

<u>Preliminary Statement</u>

In response to North Third Development's and Bennun's  first motion to dismiss, Plaintiffs submitted an amended pleading which seeks to add sound and fury, but signifies nothing.  Indeed, the amended pleading simply repackages the shotgun approach of the first pleading, with irrelevant detail and a convoluted recitation of events allegedly connected to a purported fraud committed in Russia in July 2010.  As before, Mr. Bennun's involvement is marginal, as Plaintiffs make no claim to have ever met or communicated with him.  His company, North Third Development, is likewise a stranger to Plaintiffs, as it did not come into existence until after the alleged fraud.

As in the initial pleading, the main players in this action are a group of Russian businessmen and investors, who apparently had a falling out over two loan agreements made in Russia.  Specifically, Plaintiffs claim that they lent one of the defendants, Thor, $2.2 million, half of which was allegedly delivered via a suitcase full of cash, but that the loan arrangement was subsequently modified so that Plaintiffs were to be paid from the proceeds of a development project involving a so-called "Williamsburg Property."  According to Plaintiffs, Thor has breached these contracts and owes them millions of dollars, which Thor cannot pay because it has since sold the Williamsburg Property.  Plaintiffs claim to have sued Thor in Russia and to have obtained a judgment against Thor in a Russian court.

Now, in an attempt to recover on the losses allegedly caused by Thor, Plaintiffs have sued for fraud in the United States, and attempt to impose liability on the new owner of the

Williamsburg Property, North 3rd Development, and its principal, Abraham Bennun.  Aware that neither of these defendants played any role in the alleged transactions, Plaintiffs resort to making vague allegations against the "defendants" generally.  However, these conclusory, generalized allegations fall far short of meeting the pleading requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure.  Moreover, Plaintiffs failed to cure this deficiency even after North 3rd Development and Bennun moved to dismiss on this very ground, confirming that these allegations cannot possibly be read to apply to these defendants.

There are absolutely no allegations that North 3rd Development ever misrepresented or omitted any facts.  Nor are there any allegations that Bennun ever misrepresented any facts.  However, in an attempt to impose liability on Bennun, the Amended Complaint alleges that Bennun acted as the attorney to Thor and some related entities, and drafted some of the relevant contracts.  Plaintiffs then make the absurd claim that, despite the fact that they do not allege to ever have met or spoken to Bennun, Bennun should have — in violation of the attorney-client privilege — disclosed his clients' purported intention to renege on the loan arrangement, and is therefore liable for fraud.

For the reasons explained below, the claims against North 3rd Development and Bennun should be dismissed with prejudice.

Statement of Facts

The Parties

Plaintiff Cornwall Management Ltd. ("Cornwall") is a Nevis corporation with its principal place of business in Charlestown, Nevis.  Plaintiff Oleg Soloviev ("Soloviev") is a Russian citizen residing in Moscow, Russia, and is Cornwall's principal.  (Am. Compl. ¶¶ 9-10).

Defendant Thor United Corporation ("Thor") is a New York corporation with its principal place of business in New York.  (*Id.* at ¶ 11).  Defendant Atlant Capital Holdings, LLC

2

("Atlant") is a Delaware limited liability company.  (*Id.* at ¶ 13).  The Amended Complaint also names certain unidentified "Thor Entities" as defendants, which, together with defendants Thor and Atlant, are referred to herein as the "Thor Companies."  (*See id.* at ¶ 12).

Defendants Oleg Batrachenko ("Batrachenko") and Peter Kambolin ("Kambolin") are individuals alleged to reside in Englewood, New Jersey and New York, New York, respectively, and are alleged to be principals, officers, directors, agents, owners, and/or employees of the Thor Companies.  (*Id.* at ¶¶ 14, 15).  Collectively, the Thor Companies, Batrachenko, and Kambolin are referred to herein as the "Thor Defendants."

Defendant North 3rd Development ("North 3rd Development") is a New York limited liability company with offices located at 130 West 42nd Street, New York, New York.  (*See id.* at ¶ 16).  The Amended Complaint alleges that it was formed in October 2010, *after* the alleged fraud.  (*Id.* at ¶ 97).

Defendant Abraham Bennun ("Bennun") is an individual residing in New York, New York, and is the managing member of North 3rd Development.  (*Id.* at ¶ 17).  Mr. Bennun was admitted to the New York bar in 2002, after receiving his LLM from Fordham Law School.  He has not practiced law in many years.

> The 2007 Contracts and 2010 Arrangement
> <u>Between Plaintiffs and the Thor Defendants</u>

The allegations in the Amended Complaint revolve around two loans totaling $2.2 million by Plaintiffs to defendant Thor.  Specifically, Plaintiffs allege that, on September 10, 2007 and September 12, 2007, Cornwall (represented by Soloviev) and Thor (represented by Batrachenko) entered into two contracts in the amounts of $1.1 million each (the "2007 Contracts").  (*Id.* at ¶¶ 37-41).  Plaintiffs contend that they wired the first $1.1 million to Thor on

September 11, 2007, and delivered a "suitcase of cash" containing the second $1.1 million to Batrachenko, on behalf of Thor, on September 12, 2007.  (*Id.* at ¶¶ 38, 42).

According to Plaintiffs, in 2010, they agreed to extend the term of the loans and, on July 20, 2010, entered into a so-called "2010 Arrangement" with  Thor, Atlant, Batrachenko, and Kambolin, pursuant to which "Kambolin, on behalf of himself and the other defendants, agreed to repay the funds owing to plaintiffs under the 2007 Contracts from the gross sale proceeds" of the development of a property known as "the Williamsburg Property," located on North 3rd Street in Brooklyn, New York.  (*Id.* at ¶¶ 52, 58).  The 2010 Arrangement is embodied in the Agreement attached as Exhibit 1 to the Amended Complaint, and is between Cornwall, Atlant, and Thor.  Neither Bennun nor North 3rd Development is mentioned anywhere in this document.

Plaintiffs further allege that on October 4, 2010, Batrachenko, on behalf of Thor, also "guaranteed the repayment to plaintiffs…" (the "Guaranty").  (*Id.* at ¶ 59).  This alleged Guaranty, attached as Exhibit 2 to the Amended Complaint, is embodied in a letter sent by Batrachenko on behalf of Thor to Soloviev.  Again, no mention is made of Bennun or North 3rd Development.

The 2010 Arrangement, on its face, simply consists of a promise by Atlant to make payments to Thor that would be used to satisfy an obligation of the Thor Companies to Plaintiffs. Plaintiffs have no contractual obligation to do (or refrain from doing) anything as a result of this Arrangement, and the Amended Complaint does not allege any reliance by Plaintiffs between July 2010 and the supposed breach of this Arrangement in November 2010.  Thus, any non-performance could, at most, give rise to a breach of contract claim against the Thor Defendants.

The Thor Defendants' Alleged Breach of the 2010 Arrangement

On or about November 8, 2010, the Williamsburg Property was sold to non-party North 3rd Acquisition LLC ("North 3rd Acquisition") for approximately $20 million.  (*Id.* at ¶ 91). Although Plaintiffs assert that this amount was "far less than the fair market value of the Property" (*id.* at ¶ 106), it is apparent from the jumbled facts recited in the Amended Complaint that the decision as to the Property's value was taken by the lender, MB Financial Bank N.A., which agreed to accept less than the total value of its loan, $25.5 million, and agreed to a short sale of the property to North 3rd Acquisition for approximately $20.8 million, based on its assessment of the Property's unfinished value.  (*See id.* at ¶¶ 88, 91-93).  Plaintiffs contend that this sale was a violation of the 2010 Arrangement because the sale yielded no proceeds for repayment to them.

Plaintiffs claim to have obtained judgments in the District Court in Moscow, Russia against Thor for breach of the 2007 Contracts, which they are attempting to enforce against Thor in the United States.  (*Id.* at ¶¶ 5, 116, 119).  Neither North 3rd Development or Bennun have anything to do with these judgments.

The Alleged Misrepresentations and Omissions

Having already obtained judgments against Thor for breach of the 2007 Contracts, Plaintiffs attempt to fashion a fraud claim by claiming that certain information was concealed from them when entering into the 2007 Contracts and/or the 2010 Arrangement.

Plaintiffs' fraud theory appears to be that when the "defendants" agreed, pursuant to the 2010 Arrangement, to pay $1.1 million from the "realization of the first areas in the project Williamsburg Terrace" to satisfy their debt to Plaintiffs, they had no intent to perform.  (*See id.* at ¶ 61 and Ex. 1).  The Amended Complaint alleges that "defendants" solicited Plaintiffs' investment by virtue of misrepresentations regarding the true plans and specifications for the

5

Williamsburg Property.  (*See id.* at ¶¶ 72, 76, 78, 79).  Plaintiffs further allege that, despite the "defendants'" purported promise to repay the loans from the proceeds of the development of the Williamsburg Property, the defendants' intent was to sell the Williamsburg Property in a short sale.  (*See id.* at ¶¶ 30, 32, 72, 125).  Plaintiffs offer no explanation of *why* the defendants would purportedly plan to short sell the Williamsburg Property.

The Amended Complaint also alleges that "defendants" misrepresented and/or omitted information material to Plaintiffs' investment such as (1) the number of stories that development would have; (2) the square footage of the development site; (3) the true ownership of the Williamsburg Property; (4) the defendants' purported history of regulatory violations; and (5) the purported lack of certain licensing.  (*See, e.g., id.* at ¶¶ 33-35, 72, 76, 78).

<u>The Lack of Specific Allegations Against North 3rd Development</u>

The Amended Complaint is almost entirely devoid of any specific allegations regarding North 3rd Development.  It does not allege that North 3rd Development ever misrepresented or concealed any information from Plaintiffs, does not allege that Plaintiffs ever communicated with anyone from North 3rd Development, and does not allege that North 3rd Development had any involvement in the 2007 Contracts or the 2010 Arrangement.  In fact, the Amended Complaint alleges that North 3rd Development was formed in October 2010 — years or months after these agreements were negotiated and executed.  (*Id.* at ¶ 97).

Rather, the sole allegations against defendant North 3rd Development are that it "is the current owner of the [Williamsburg] Property" and has engaged in some post-acquisition activities such as mortgaging the Property.  (*Id.* at ¶¶ 95-104).  As Plaintiffs concede, however, the Williamsburg Property was first purchased from the Thor Defendants by non-party North 3rd Acquisition and then, in a separate transaction, certain portions thereof were sold to North 3rd Development.  (*Id.* at ¶¶ 91, 93, 95).  Specifically, North 3rd Acquisition purchased the

6

Williamsburg Property for approximately $20 million dollars, kept the retail portions for itself, and sold the residential portions to North 3rd Development for approximately $3 million.  (*See* Am. Compl. ¶ 95).

The Amended Complaint does not allege that North 3rd Acquisition is affiliated with North 3rd Development; its principal, Abraham Bennun; or any of the other defendants.  Nor could it, as North 3rd Acquisition is, in fact, owned by SL Green Realty Corp ("SL Green").  (Zaytsev Dec. Ex. 2).[1]  The similarity in their names is no doubt due to the address of the Williamsburg Property, which is located on North 3rd Street in Brooklyn, New York.  (*Id.* at ¶ 19).

### The Lack of Specific Allegations Against Bennun

The Amended Complaint is just as short on specific allegations against Bennun.  It does not allege that Bennun ever misrepresented any information to Plaintiffs, does not allege that Plaintiffs ever met or communicated with Bennun, and does not allege that Bennun was a party to the 2007 Contracts or the 2010 Arrangement (and in fact the exhibits to the Amended Complaint make clear that he was not a party).

Rather, the Amended Complaint alleges that Bennun acted as the attorney for the Thor Companies and drafted some of the relevant agreements (despite the fact that these documents are in Russian — a language that Bennun does not speak).  (*Id.* at ¶¶ 44, 57, 60, 80).  Based on this allegation, the Amended Complaint alleges that Bennun "had to have known the other

---

[1] The Court may consider the articles referred to by Plaintiffs in paragraphs 81 and 113 of the Amended Complaint, because they are incorporated by reference and Plaintiffs clearly have notice of them.  *See Zdenek Marek v. Old Navy (Apparel) Inc.*, 348 F.Supp.2d 275, 279 (S.D.N.Y. 2004) (In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference."); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) ("where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint," the court may consider those documents on a motion to dismiss).  Here, Plaintiffs reference two articles published by the Wall Street Journal dated November 15, 2010 and September 6, 2011.  The November 15 article confirms that SL Green purchased the Williamsburg Property.  (Zaytsev Dec. Ex. 2).

defendants had no intention of performing under the 2010 Arrangement," and "concealed his preparations to buy the Williamsburg Property in November 2010." (*Id.* at ¶¶ 55, 61).

The remaining allegations against Bennun are as follows: (1) that Bennun is employed by an entity known as Thor Capital Group, Inc. ("Thor Capital") in Moscow, Russia, a non-party that is not alleged to be affiliated with any of the Thor Defendants (*id.* at ¶ 81); (2) that Bennun "acted as the developer for the Williamsburg Property," or held some ownership interest in the Williamsburg Property before its sale to North 3rd Acquisition, and received profits from the development project (*id.* at ¶¶ 69, 81); and (3) that Bennun, along with defendants Batrachenko and Kambolin, "controlled, dominated, managed and operated" the Thor Companies. (*id.* at ¶¶ 18, 132-34).

<u>Plaintiffs Have Already Amended the Complaint and Failed to Cure Its Deficiencies</u>

Plaintiffs filed their Complaint on or about November 21, 2012. (Dkt. No. 1). On January 11, 2013, North 3rd Development and Bennun moved to dismiss the Complaint as against them. (Dkt. No. 4).

First, North 3rd Development and Bennun sought dismissal of the fraud claim because (1) the generalized references to "defendants" did not state a claim for fraud against them; and (2) the remainder of the allegations (including the fact that North 3rd Development owns the Williamsburg Property, that Bennun purportedly works for non-party Thor Capital Group, that Bennun allegedly acted as an attorney to the Thor Companies and purportedly drafted some documents, and that Bennun purportedly acted as the developer for the Williamsburg Property) did not state a claim for fraud. Second, North 3rd Development and Bennun also argued to dismiss the claim to pierce the corporate veil, because the Complaint's conclusory allegation that Bennun "controlled, dominated, managed and operated" the Thor Companies was wholly unsupported by a single fact, and therefore insufficient to state a claim.

On or about February 26, 2013, Plaintiffs filed an Amended Complaint.  (Dkt. No. 8).  As set forth below, the Amended Complaint, however, cures none of the deficiencies identified in the prior motion to dismiss.

<u>Argument</u>

I

THE COURT SHOULD DISMISS WITH PREJUDICE THE AMENDED COMPLAINT
AGAINST NORTH 3RD DEVELOPMENT AND ABRAHAM BENNUN

A.   <u>Standard of Review</u>

To survive a motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  As recently explained by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), a pleading must be dismissed unless it alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).  It is no longer enough to make conclusory accusations of wrongdoing, or to simply recite the legal elements of a claim; rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level…."  *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotations and citations omitted).

B.   The Complaint Fails to State a Claim for Fraud
Against North 3rd Development or Bennun

"Under New York law, to state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making

the representation that it was false when made, justifiable reliance by the plaintiff and resulting

injury." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) (citation omitted).

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, when "alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b).  "Rule 9(b) is designed to further three goals:  (1) providing a defendant fair

notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm

to his reputation or goodwill; and (3) reducing the number of strike suits."  *DiVittorio v.*

*Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

        1.     The Generalized References to the "Defendants"
                 Fail to Satisfy the Requirements of Fed. R. Civ. P. 9(b)

To meet the requirements of Rule 9(b), "fraud allegations ought to specify the time,

place, speaker, and content of the alleged misrepresentations.  Where multiple defendants are

asked to respond to allegations of fraud, the complaint should inform each defendant of the

nature of his alleged participation in the fraud."  *Id.*

Here, the Amended Complaint alleges in general terms that the "defendants" made

certain misrepresentations or omissions, but does not specifically identify North 3rd

Development or Bennun.  For example, the Amended Complaint alleges that (1) during meetings

in Moscow in September 2007, the "<u>defendants, through Kambolin and others</u> … guaranteed

repayment of the $2.2 million" loan (*id.* at ¶ 31); (2) during meetings in Moscow in July and

October 2010, the "<u>defendants, through Batrachenko and Kambolin</u>" promised Plaintiffs that

"the loans would be presently repaid from the project developing the Williamsburg Property" (*id.*

at ¶ 32); (3) the "<u>defendants</u> sought and intended to create a veneer of respectability and

credibility" by representing that the developer of the Williamsburg Property was associated with

New York City Mayor Michael Bloomberg" (*id.* at ¶ 33); (4) the "<u>defendants</u> knowingly and

intentionally misrepresented … they were successfully and timely developing the Williamsburg Property with millions of dollars of investors' money, which they knew to be false (*id.* at ¶ 34); (5) the "<u>defendants</u> failed to disclose material facts concerning their violations of financial regulations," and in particular failed to disclose that Kambolin "had been censured and fined" by FINRA (*id.*); (6) the "<u>defendants</u> misrepresented themselves as [licensed] investment advisors and professionals," and claimed that Thor's Russian affiliate was licensed by the Russian Federation's securities regulator (*id.* at ¶ 35); (7) the "<u>defendants</u> knowingly and intentionally concealed" their plan to build a five-story building on the Williamsburg Property, their negotiations with MB Financial Bank to short sale the Williamsburg Property, and their purported undercapitalization (*id.* at ¶¶ 72-73); (8) the "<u>defendants</u> knowingly misrepresented which entity was in control of the Williamsburg Property" (*id.* at ¶ 76); and (9) the "<u>defendants</u> represented that the Williamsburg comprised approximately 146,361 square feet," when the property records show that permission for construction was granted on approximately 30,000 additional square feet (*id.* at ¶ 78) (emphasis added).[2]

Such generalized allegations cannot withstand a motion to dismiss under Rule 9(b).  For example, in *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986), the Second Circuit upheld the district court's dismissal of a claim for securities fraud pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, holding that the complaint improperly "alleges numerous representations attributed only to the 'defendants'" and explaining that, to satisfy Rule 9(b), the complaint must

---

[2] There are <u>no</u> specific allegations regarding any misrepresentations or omissions made by North 3rd Development, and only one allegation of a purported omission by Bennun.  Specifically, the Amended Complaint alleges that, because Bennun purportedly acted as attorney for the Thor Defendants and purportedly drafted some of the relevant documents (despite the fact that these documents are in Russian, a language that Bennun does not speak), Bennun "had to have known the other defendants had no intention of performing under the 2010 Arrangement," and "concealed his preparations to buy the Williamsburg Property in November 2010."  (*Id.* at ¶¶ 55, 61).  However, as explained in Point I.B.2 below, this purported omission cannot state a claim for fraud against Bennun for various reasons, including that Bennun is not alleged to have had any duty to disclose such information, and because such disclosure would have violated the attorney-client privilege.

"connect allegations of fraudulent representations to particular defendants."  *See also DiVittorio*, 822 F.2d at 1247 ("derelictions … pleaded against the defendants generally, with little or no specification as to individual roles" do not satisfy Rule 9(b)); *Brickman v. Tyco Toys, Inc.,* 722 F. Supp. 1054, 1061 (S.D.N.Y. 1989) ("complaint's frequent attribution of fraudulent omissions to 'the defendants' generally … is fatal to plaintiff's claim against these defendants.").

Here, the Amended Complaint repeatedly fails to specify, among other things, the time, place, and speaker of the alleged misrepresentations, improperly referring to the "defendants" collectively.  These generalized references to unspecified "defendants" do not provide fair notice to North 3rd Development or Bennun of Plaintiffs' claims.  *See DiVittorio*, 822 F.2d at 1247.

Additionally, it is clear that these allegations against unspecified "defendants" cannot possibly apply to North 3rd Development or Bennun.  Plaintiffs do not allege that they ever met, spoke to, or had any personal dealings with Bennun or North 3rd Development (and in fact, Bennun had never even heard of the Plaintiffs until this lawsuit was filed).  Indeed, Plaintiffs allege that North 3rd Development was not incorporated until October 12, 2010, long after the alleged misrepresentations.  Further, although the alleged fraudulent misrepresentations were made in the context of the 2007 Contracts and the 2010 Arrangement, the Amended Complaint conspicuously fails to allege that North 3rd Development or Bennun were parties to those agreements or stood to obtain any benefit from them.  Indeed, the exhibits attached to the Amended Complaint, which purportedly embody the 2010 Arrangement and other agreements, confirm that neither North 3rd Development nor Bennun had any role in those transactions, but rather that these agreements were between Plaintiffs and the Thor Defendants.

Perhaps most tellingly of all is the fact that, even with the benefit of an amendment, Plaintiffs have failed to cure these deficiencies.  In their prior motion to dismiss, North 3rd

12

Development and Bennun expressly argued that the generalized references to the "defendants" were insufficient to state a claim under Rule 9(b), and specifically identified each of the aforementioned allegations.  (Dkt. No. 4 at Point I.B).  In response, Plaintiffs served an Amended Complaint, but failed to revise a single one of the general allegations against the "defendants" to specifically include North 3rd Development or Bennun, or to add any additional facts.[3]  This failure is not accidental; rather, it is clear that Plaintiffs are unable to revise their allegations to include North 3rd Development or Bennun because these defendants were not in any way involved in any of the transactions or events described in the Amended Complaint, and never made any misrepresentations or omissions.  If the term "defendants" was meant to encompass North 3rd Development and Bennun, then Plaintiffs would have so stated in their amended pleading.  They have not done so, confirming that these allegations cannot apply to North 3rd Development or Bennun, and for this reason the Amended Complaint must be dismissed.

2.  The Remaining Allegations Fail to
State a Claim Against North 3rd Development

As noted above, North 3rd Development appears to have been named as a defendant solely because it is the current owner of the Williamsburg Property.  However, the Amended Complaint is devoid of a single allegation to support a claim for fraud against this defendant.  In particular, the Amended Complaint does not allege that North 3rd Development made any misrepresentations to or concealed any information from Plaintiffs.  Nor can it, as the Amended Complaint concedes that North 3rd Development was formed on October 12, 2010, months after

---

[3] In fact, the Amended Complaint exacerbates this deficiency, by adding yet more generalized allegations that clearly do not apply to North 3rd Development or Bennun.  For example, although the Amended Complaint adds paragraphs alleging that Plaintiffs lent money to the "defendants," that the "defendants" defaulted, and that the "defendants" gave assurances that the money lent pursuant to the 2007 Contracts would be returned (Am. Compl. ¶ 2), the Amended Complaint and its exhibits make clear that neither North 3rd Development nor Bennun were parties to the 2007 Contracts or the 2010 Arrangement.

the alleged misrepresentations, which Plaintiffs claim were made in connection with the 2007

Contracts (in September 2007) and the 2010 Arrangement (in July 2010).  (*See* Am. Compl.

¶ 97).

Indeed, apart from some general allegations about its incorporation and management, the

only specific allegations against North 3rd Development are (1) that it purchased the

Williamsburg Property from an unaffiliated non-party, SL Green, and continues to own it to date,

and (2) that it engaged in some post-acquisition activities such as mortgaging the Property.[4]  (*See*

*id.* at ¶¶ 95-104).  These allegations, however, do not state a claim for fraud.  *See Lerner*, 459

F.3d at 291 (to state a claim for fraud, plaintiff must allege, among other things, a false

representation of material fact).

Accordingly, the claims against North 3rd Development must be dismissed.

3.    The Remaining Allegations Fail to State a Claim Against Bennun

The specific allegations against Bennun similarly fall short of stating a claim for fraud.

In particular, the Amended Complaint is devoid of a single specific allegation that Bennun made

any false representations of material fact to Plaintiffs.  Nor could Plaintiffs make such allegation,

particularly given that they do not allege, nor could they, that they ever met or communicated

with Bennun.  Moreover, the Amended Complaint makes clear that all of the alleged

misrepresentations were made in connection with the 2007 Contracts and the 2010

Arrangements.  However, the pleading is devoid of any allegation that Bennun ever participated

in any of the meetings or negotiations with Plaintiffs surrounding those agreements, to which he

was not a party.  Rather, all of the allegations surrounding those events specifically reference

---

[4] What the Amended Complaint conveniently fails to mention is that the portion of the Williamsburg Property purchased by North 3rd Development was uncompleted, had several outstanding liens, and lacked certificates of occupancy.  North 3rd Development paid all the lines, took additional loans to complete construction on the Williamsburg Property, and obtained the requisite certificates of occupancy.  Indeed, Plaintiffs concede that the total debt incurred by North 3rd Development since the sale is $36.4 million.  (Am. Compl. ¶ 104).

14

Batrachenko and Kambolin — not Bennun.  (*See, e.g.,* Am. Compl. ¶¶ 22-25 (alleging that Kambolin solicited the loan); ¶ 31 (alleging that Kambolin met with Plaintiffs in Moscow); ¶ 32 (alleging that Batrachenko and Kambolin met with Plaintiffs in Moscow)).

In an effort to cure this deficiency, the Amended Complaint attempts to impose liability on Bennun for fraudulent concealment, alleging that Bennun, as attorney to the Thor Companies, drafted one of the 2007 Contracts, the 2010 Arrangement, and other legal documents, and therefore "had to have known the other defendants had no intention of performing under the 2010 Arrangement," and "concealed his preparations to buy the Williamsburg Property in November 2010."  (*Id.* at ¶¶ 55, 61).  However, this purported omission cannot state a claim for fraudulent concealment against Bennun for at least three reasons.

*First*, the allegation that Bennun "concealed his preparations to buy the Williamsburg Property in November 2010" does not comply with the heightened pleading requirements of Rule (b).  (*See* Point I.B.I, *supra*).  *See Eickhorst v. E.F. Hutton Group, Inc.,* 763 F. Supp. 1196, 1202 (S.D.N.Y. 1990) ("Allegations of fraudulent concealment, like allegations of fraud, must satisfy the pleading requirements of Rule 9(b).").  Here, Plaintiffs do not identify where or how such concealment occurred, or even from whom the information was concealed.  Plaintiffs, no doubt, are intentionally vague in making this allegation because, given that they do not allege that they ever met or spoke to Bennun or that Bennun was in any way involved in the events described in the Amended Complaint, they are well aware that Bennun could not have concealed any information from them.  *See O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 232 (S.D.N.Y. 1989) ("plaintiffs' allegations of fraudulent concealment are insufficient under Rule 9(b) as they fail to specify the time, place, speaker, or even the content of alleged misrepresentations, and fail to provide any factual basis whatsoever for conclusory allegations of

fraud.").  Indeed, even Plaintiffs' vague assertion that the concealment occurred in "February 2010, and thereafter in October 2010" (Am. Compl. ¶ 55) makes clear that Bennun could not have concealed any information from them, because the preceding two paragraphs expressly allege that, during those two months, it was defendants Batrachenko and Kambolin — not Bennun — who were dealing with Plaintiffs, and that Bennun's role, if any, was that of attorney. (*See* Am. Compl. ¶¶ 53-57).

*Second*, the Amended Complaint does not allege, as it must, that Bennun had any duty to disclose such information.  Under New York law, "a duty by a party to a business transaction to speak [arises] in three situations:  first, where the party has made a partial or ambiguous statement…; second, when the parties stand in a fiduciary or confidential relationship with each other; and third, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."  *Brass v. Am. Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993); *see also Canpartners Investments IV, LLC v. Alliance Gaming Corp.*, 981 F. Supp. 820, 826 (S.D.N.Y. 1997) (dismissing claim for fraudulent concealment where "Plaintiffs have … failed to allege facts giving rise to a duty to disclose.").

Here, the Amended Complaint does not allege that Bennun made a partial or ambiguous statement.  Indeed, the pleading does not allege that Bennun ever made any statement whatsoever, of any kind, to Plaintiffs, and does not even allege that Plaintiffs ever met or communicated with Bennun.  Nor does the Amended Complaint allege that Bennun had a fiduciary or confidential relationship with Plaintiffs.  Rather, the Amended Complaint alleges that Bennun acted as attorney to the Thor Companies, who were on the opposite side of the transaction as Plaintiffs.  Moreover, no such confidential relationship can exist where, as here,

Plaintiffs do not allege that they ever met or communicated with Bennun.  In any event, the arms-length transactions described in the Amended Complaint would not give rise to any special relationship.  *See Canpartners*, 981 F. Supp. at 826 ("[r]egular business relations … do not rise to the level of a special relationship"); *Success Universal Ltd. v. CWJ Int'l Trading, Inc.,* 95 CIV 10210 (DLC), 1996 WL 535541, at *6 (S.D.N.Y. Sept. 20, 1996) (arms-length transaction "does not give rise to a fiduciary relationship, or to the kind of special relationship required to create a duty to disclose.").

Plaintiffs also cannot rely on any duty arising out of the "superior knowledge" prong because this duty "only arises between two parties to a business transaction."  *WestRM-W. Risk Markets, Ltd. v. XL Reinsurance Am., Inc.,* 02 CIV. 7344 (MGC), 2006 WL 2034627, at *10 (S.D.N.Y. July 19, 2006).  Here, the Amended Complaint does not allege that Bennun was a party to any business transaction involving Plaintiffs, and the exhibits attached to the pleading make clear that Bennun was not a party to any of the relevant agreements.  Furthermore, "a third-party duty to disclose has only been found where the third-party to the transaction has had some direct communication with the fraud victim regarding the fraudulent transaction."  *Id.*  Even assuming *arguendo* that, as the Thor Companies' purported attorney, Bennun could constitute a "third party," the Amended Complaint does not allege that Bennun ever communicated with Plaintiffs.  *See id.* (dismissing fraud claim where there was no evidence that plaintiff ever communicated with defendants so as to give rise to duty to disclose).  In any event, the Amended Complaint also does not explain how Bennun's role as attorney to the Thor Companies and purported drafter of some of the relevant agreements leads to the conclusion that he must have known about the Thor Defendants' purported intention to renege on the 2010 Arrangement.  Nor do they explain how, in light of the fact that he is not alleged to have ever met or spoken to

Plaintiffs, Bennun could have known what, if anything, Plaintiffs knew, or how he could have disclosed anything to Plaintiffs.

Indeed, the suggestion that Bennun, as the alleged attorney for the Thor Companies, could have had a duty to disclose his clients' purported intentions with respect to the 2007 Contracts or the 2010 Arrangements, is absurd, as it would require Bennun to breach the attorney-client privilege and his ethical obligations.  *See* N.Y. R. Prof'l Conduct 1.6.

*Finally*, the fraudulent concealment also fails, because the Amended Complaint does not allege that Bennun failed to disclose any material <u>fact</u>.  *See Lerner*, 459 F.3d at 291 ("to state a cause of action for fraud, a plaintiff must allege a representation of material <u>fact</u>.") (emphasis added).  Rather, at best, the pleading alleges that Bennun failed to disclose the Thor Defendants' intention to renege on the 2010 Arrangement, or his purported intention to purchase the Williamsburg Property.  These intentions do not constitute facts that can support a claim for fraud, particularly where the Amended Complaint does not allege that Bennun made any affirmative representations of his or the Thor Defendants' intent to perform under the 2007 Contracts or 2010 Arrangement (nor could he have made such representation, as Bennun is not a party to those agreements and never met or spoke to Plaintiffs).  *See Liberty Mut. Ins. Co. v. Harvey Gerstman Associates, Inc.,* CV 11-4825 SJF ETB, 2012 WL 5289606, at *11 (E.D.N.Y. Sept. 13, 2012) *report and recommendation adopted,* CV-11-4825 SJF ETB, 2012 WL 5289587 (E.D.N.Y. Oct. 24, 2012) (fraudulent inducement claim dismissed because plaintiffs "have failed to demonstrate that the allegedly false statement was a statement of fact"); *N. Valley Partners, LLC v. Jenkins,* 23 Misc. 3d 1112(A), 885 N.Y.S.2d 712 (N.Y. Sup. 2009) ("opinions of value or future expectations are little more than puffery and do not constitute actionable fraud") (citations omitted); *Lanzi v. Brooks*, 54 A.D.2d 1057, 1058, 388 N.Y.S.2d 946, 949 (3d Dep't 1976) *aff'd*,

43 N.Y.2d 778, 373 N.E.2d 278 (1977) (speculation about what defendant "thought might happen in the future … cannot support an action for fraud since it is not a statement of fact, but rather an expression of opinion").[5]

4.    The Amended Complaint Fails to Allege any Reliance by Plaintiffs

The claims against North 3rd Development and Bennun also fail for an additional reason: the alleged fraud arises out of the 2010 Arrangement, but Plaintiffs do not allege any reliance at all on the contractual promises set forth in that Arrangement.  *See Lerner*, 459 F.3d at 291 (elements of a claim for fraud include "justifiable reliance by the plaintiff").

The 2010 Arrangement merely reflects a commitment by the Thor Companies to make payments to facilitate Thor's repayment of its debt to Plaintiffs.  The Amended Complaint does not allege that Plaintiffs advanced new funds as a result of this Arrangement.  Nor do Plaintiffs claim to have done anything differently in the three-and-a-half months between the execution of the 2010 Arrangement on July 20, 2010 and the sale of the Williamsburg Property on November

---

[5] The remaining allegations against Bennun, which do not identify any misrepresentations or omissions, are irrelevant and not actionable.  Specifically, Plaintiffs allege that Bennun works for Thor Capital Group, "acted as the developer for the Williamsburg Property," held some ownership interest in the Williamsburg Property, and received unspecified profits from the development project.  (Am. Compl. ¶¶ 69, 81).  However, none of these allegations constitute misrepresentations or omissions, as required to state a claim for fraud, and, moreover, are irrelevant.  For example, the fact that Bennun allegedly worked for Thor Capital Group is irrelevant because, even after the benefit of an amendment, Thor Capital Group is not named as a defendant, not alleged to be affiliated with the other Thor Companies, and not alleged to be a participant in the purported fraud.  Further, Bennun's purported employment or service as attorney to the Thor Companies is also irrelevant because, even with the benefit of an amendment, Plaintiffs do not allege that Bennun was a director or officer of those Companies, or that he personally participated in the alleged fraud.  *See LaBelle v. Chereskin*, 88 CIV. 3381 (JFK), 1991 WL 3050, at *3 (S.D.N.Y. Jan. 9, 1991) ("a director or officer of a corporation is not liable, merely because of his official character, for the fraud or false representations of the other officers or agents of the corporation or for fraud attributable to the corporation itself, if such director or officer is not personally connected with the wrong and does not participate in it.") (citation omitted). Finally, the allegation that Bennun acted as a "developer" or received "profits" from the development project does not support a claim of wrongdoing, particularly given that Plaintiffs do not even allege *when* Bennun purportedly acted as developer, and as support for this claim point to two articles dated *after* Bennun purchased the Williamsburg Property.  (*See* Am. Compl. ¶ 81).

8, 2010.[6]  Thus, any non-performance could, at most, give rise to a breach of contract claim against the Thor Defendants.

### C.     The Alter Ego Claim Should Also Be Dismissed

Plaintiffs' second count for alter ego liability should also be dismissed.  Specifically, Plaintiffs seek to pierce the corporate veil to render North 3rd Development and Bennun liable for all debts, obligations, and judgments of Thor.  (Am. Compl. ¶¶ 135-36).

Under New York law, in order to pierce the corporate veil, the party making such request must "make a two-part showing:  (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) (citation omitted).  Although cases have held that the corporate veil can be pierced either when there is fraud or when the corporation has been used an alter ego, the Second Circuit has made clear that "the element of domination and control never was considered to be sufficient of itself to justify the piercing of a corporate veil."  *Freeman v. Complex Computing Co., Inc.,* 119 F.3d 1044, 1053 (2d Cir. 1997); *see also Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.,* 909 F.2d 698, 703 (2d Cir. 1990).  Thus, "[u]nless the control is utilized to perpetrate a fraud or other wrong, limited liability will prevail."  *Freeman*, 119 F.3d at 1053; *see also Am. Fuel Corp.*, 122 F.3d at 134 ("While complete domination of the corporation is the key to piercing the corporate veil, such

---

[6] Plaintiffs make three claims of reliance, neither of which have to do with the 2010 Arrangement.  First, they claim that they were induced to lend money to the "defendants," an act that must have been taken in reliance on, if anything, the 2007 Contracts.  (*See* Am. Compl. ¶ 36).  Second, they claim that they were induced by certain misrepresentations and omissions that were made prior to the 2010 Arrangement to enter into that Arrangement. (*See id.* at ¶ 56).  Finally, Plaintiffs claim that, had the "defendants" disclosed their plans to sell the Williamsburg Property sooner, Plaintiffs "would have commenced earlier legal actions to recover their monies."  (*Id.* at ¶ 128).  However, Plaintiffs allege that the Williamsburg Property was sold in November 2010, just three-and-a-half months after the 2010 Arrangement.  (*Id.* at ¶ 91).  Plaintiffs then waited two years to commence this action.

domination, standing alone, is not enough; some showing of a wrongful or unjust act toward [the party seeking piercing] is required.") (citation omitted).

Though "veil-piercing claims are generally subject to the pleading requirements imposed by Fed. R. Civ. P. 8(a), where a veil-piercing claim is based on allegations of fraud, the heightened pleading standard of Rule 9(b) is the lens through which those allegations must be examined."[7] *EED Holdings v. Palmer Johnson Acquisition Corp.,* 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (citations omitted).  Furthermore, "it is well-established that purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under Rule 8(a)'s liberal notice pleading standard." *Id.* (citation omitted).  Rather, "[t]o avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim."  *Id.*; *see also In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) ("purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard."); *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, 01 CIV. 2946 (AGS), 2002 WL 432390, at *12 (S.D.N.Y. Mar. 20, 2002) ("in order to overcome the presumption of separateness afforded to related corporations, [defendant] is required to plead specific facts supporting its claims, not mere conclusory allegations.").

Here, the Amended Complaint alleges in the most conclusory fashion that Thor, Atlant, and North 3rd Development "are the alter egos of defendants Batrachenko, Kambolin, and Bennun," who purportedly "abused the corporate form by exercising complete domination and control over the operations, management, legal and financial affairs" of those companies in order

---

[7] It is evident that Plaintiffs have styled their corporate veil-piercing claim as a claim for "alter ego liability" in a transparent effort to avoid application of the heightened pleading standard of Rule 9(b).  However, Plaintiffs' allegations that the defendants purportedly "used [their] domination and control to perpetuate a fraud or a wrong against Plaintiffs" makes clear that this claim is based on fraud and therefore subject to Rule 9(b).

21

to "perpetuate a fraud or a wrong against Plaintiffs." (*Id.* at ¶¶ 131-33).  However, no facts are pled to support these assertions, and the few facts that are pled are patently insufficient to support a claim for piercing the corporate veil.

For example, as to the element of domination and control, the Amended Complaint alleges only that Bennun acted as an attorney for the Thor Companies and works for a company with the name "Thor" in the title — a company that is not named as a defendant, and is not alleged to be affiliated with any of the other defendants (even after the benefit of an amendment). Clearly, these allegations do not support the conclusion that Bennun exercised any control or domination over the Thor Companies.  Nor is any explanation offered as to how or why Batrachenko, Kambolin, or others controlled North 3rd Development.

Similarly, the Amended Complaint contains no factual allegations to support the conclusory assertion that the defendants used the corporate form to perpetrate a fraud or commit a wrong against Plaintiffs.  The sole allegations of wrongdoing are non-specific allegations against unidentified "defendants," which, for the reasons explained above, cannot satisfy the requirements of Rule 9(b).  (*See* Point I.B, *supra*).

North 3rd Development and Bennun pointed out these deficiencies to Plaintiffs in their prior motion to dismiss.  (Dkt. No. 4 at Point I.D)  Nevertheless, despite having served an Amended Complaint, Plaintiffs have failed to allege <u>even a single new fact</u> to support this claim, demonstrating that no such facts exist or could be pled.

Accordingly, because the Amended Complaint's conclusory and generalized allegations cannot support a claim for corporate veil-piercing or alter-ego liability, the claims against North 3rd Development and Bennun should be dismissed.

D.     The Dismissal Should Be With Prejudice

Leave to amend may be denied "[w]here it appears that granting leave to amend is unlikely to be productive," such as where "the proposed amendment is futile." *Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243, 258 (2d Cir. 2002).  Leave can also be denied where a plaintiff "has had multiple opportunities to amend his complaint and still has failed to allege a viable claim." *Pik v. Inst. of Int'l Educ.,* 08 CIV. 3909 (NRB), 2008 WL 4922112, at *6 (S.D.N.Y. Nov. 10, 2008).

Here, Plaintiffs have already had one opportunity to amend, and have failed to cure any of the deficiencies identified by North 3rd Development or Bennun in the prior motion to dismiss.  Accordingly, the Amended Complaint should be dismissed with prejudice.

Conclusion

For the reasons set forth above, defendants North 3rd Development and Abraham Bennun respectfully request that the Court dismiss the Amended Complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 13, 2013

                                    OLSHAN FROME WOLOSKY LLP

                                    By:  */s/ Renee M. Zaytsev*
                                         Thomas J. Fleming
                                         Renee M. Zaytsev
                                         *Attorneys for Defendants*
                                         *Abraham Bennun and*
                                         *North 3rd Development, LLC*
                                         Park Avenue Tower
                                         65 East 55th Street
                                         New York, New York 10022
                                         (212) 451-2300

1976772-2