UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CORNWALL MANAGEMENT LTD and OLEG SOLOVIEV a/k/a OLEG VALENTINOVICH SOLOVIEV,<br><br>                    Plaintiffs,<br><br>        -against-<br><br>THOR UNITED CORP. a/k/a THOR UNITED CORPORATION, JOHN DOE THOR ENTITIES, ATLANT CAPITAL HOLDINGS, LLC, OLEG BATRACHENKO a/k/a O.V.BATRACHENKOV, PETER KAMBOLIN, NORTH 3RD DEVELOPMENT, LLC, and ABRAHAM BENNUN,<br><br>                    Defendants. | 12 CIV 08551 (LLS) |

---

REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
ABRAHAM BENNUN'S AND NORTH 3RD DEVELOPMENT, LLC'S
MOTION TO DISMISS THE AMENDED COMPLAINT

---

OLSHAN FROME WOLOSKY LLP
*Attorneys for Defendants*
*Abraham Bennun and*
*North 3rd Development, LLC*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

2048638-1

Defendants North 3rd Development and Abraham Bennun, by their attorneys, submit this reply memorandum of law in support of their motion to dismiss the Amended Complaint.[1]

I. THE FRAUD CLAIMS SHOULD BE DISMISSED

A. The Fraud Claim Against North 3rd Development Should Be Dismissed

Plaintiffs' opposition memorandum confirms that the claims against North 3rd Development should be dismissed. Both the Amended Complaint and Plaintiffs' opposition brief states just two facts about North 3rd Development: its principal is Abraham Bennun, and it purchased the Williamsburg Property. These facts, of course, are not enough to sustain a claim for fraud against North 3rd Development, which requires the existence of some false representation or omission. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006). The Amended Complaint alleges none. Indeed, Plaintiffs concede that they never met or communicated with North 3rd Development, and that North 3rd Development was formed in October 2010 – months or years after the alleged fraud took place.

Rather than address these glaring deficiencies, Plaintiffs instead make nefarious-sounding assertions that are demonstrably false. For example, Plaintiffs claim that North 3rd Development purchased the Williamsburg Property from a "straw buyer intermediary," North 3rd Acquisition. (Pl. Mem. at 21). However, elsewhere, Plaintiffs concede that North 3rd Acquisition has <u>no affiliation</u> with North 3rd Development, Bennun, or any of the other defendants. In fact, North 3rd Acquisition is owned by SL Green Realty Corp., a non-party that is not alleged to be affiliated with any of the defendants in this action – facts that Plaintiffs similarly do not dispute.

Plaintiffs further attempt to drum up suspicion by asserting that North 3rd Development acquired the Williamsburg Property for "only" $3 million. (Pl. Mem. at 13). However, Plaintiffs

---

[1] Capitalized terms herein have the meanings set forth in North 3rd Development's and Bennun's opening memorandum of law. (Dkt. No. 11).

concede that the Property was in fact sold to an unaffiliated entity for <u>more than $20 million</u>, which then sold <u>only the less-valuable, partially-built residential portions</u> to North 3rd Development for $3 million, keeping the completed commercial portions for itself. (*See* Am. Compl. ¶¶ 91, 95). The mere fact that North 3rd Development is the current owner of the Property does not render it liable for a fraud that occurred long before it was formed, and in which it could have played no part. Accordingly, the claims against North 3rd Development must be dismissed.

    B.    <u>The Fraud Claim Against Bennun Should Be Dismissed</u>

Plaintiffs' fraud theory as to Bennun is that, when entering into the 2010 Arrangement, the Thor Defendants knew that they were going to "short sell" the Williamsburg Property, and that Bennun, as the Thor Defendants' attorney, knew of his clients' intent and is liable for his failure (in violation of the attorney-client privilege) to disclose that information to Plaintiffs. Plaintiffs claim that, as a result of this fraud, they forestalled litigation against the Thor Defendants for the approximately three-and-a-half months between signing the 2010 Arrangement and the sale of the Williamsburg Property. (*See* Pl. Mem. at 25).

First, Plaintiffs short delay in commencing suit against the Thor Defendants is insufficient as a matter of law to satisfy the element of reliance.[2] Plaintiff do not allege that they advanced new funds or otherwise did anything differently in this short period. Although Plaintiffs assert that the issue of reliance is normally too fact specific to be determined on a motion to dismiss, they offer no factual issues to be resolved. Contrary to Plaintiffs' conclusory

---

[2] To the extent that Plaintiffs suggest that they abated the filing of any claim against the Williamsburg Property, any such notion must be rejected. Plaintiffs never had any agreement with the Property – the sole agreements at issue here were between Plaintiffs and the Thor Defendants. Moreover, any attempt to recover from the Property would be fruitless, as the lender has a first priority mortgage well in excess of the amounts sought to be recovered by Plaintiffs.

2

assertions, the Court can determine as a matter of law that a short and non-prejudicial delay in bringing litigation does not constitute reliance to support a claim for fraud.

Plaintiffs' reliance theory is not the only aspect of their claim that is inherently nonsensical. For example, Plaintiffs do not explain how, in light of the fact that a short sale requires the consent of the lender[3] (in this case, MB Financial Bank N.A., a non-party that is not alleged to be affiliated with any of the defendants), the Thor Defendants could possibly have planned to or known that they would short sell the Williamsburg Property. Nor do Plaintiffs explain <u>why</u> the Thor Defendants would want, let alone plan, to short sell the Williamsburg Property: a short sale results in no profit to the seller, who is still liable to the lender for the deficiency. *See* 2 Law of Real Estate Financing § 12:10. Indeed, a seller would not resort to a short sale unless it was in, or about to be, in default of the mortgage. *See id.* Thus, if the Thor Defendants had not short sold the Williamsburg Property, they would have instead proceeded to foreclosure, resulting in the same consequence for Plaintiffs.

If the Thor Defendants had no intent to short sell the Williamsburg Property, then certainly Bennun could not have known of any such intent and, of course, Bennun cannot be liable for his failure to disclose what he did not know.

Furthermore, Plaintiffs offer no plausible motive for Bennun to defraud Plaintiffs. Plaintiffs allege that Bennun "had the financial motive to paint a far rosier financial picture than actually existed in order to induce the plaintiffs to stay litigation." (Pl. Mem. at 23). However, the litigation to which Plaintiffs refer is the suit to recover the loans due under the 2007

---

[3] "A real estate short sale is a transaction in which the mortgagor, with the consent of the mortgagee, sells the real property to a third party for a price that results in the mortgagee receiving less than the amount due it, *i.e.*, a deficiency." *In re Roberts*, 09-52155, 2011 WL 2118857, at n. 2 (Bankr. D. Conn. May 25, 2011); 2 Law of Real Estate Financing § 12:10 ("Under the short-sale procedure, the mortgagor secures the agreement of the mortgagee to release the mortgage upon a bona fide sale to a third party for an agreed upon price below the mortgage loan balance.").

3

Contracts. Bennun was not a party to the 2007 Contracts, and the litigation that was ultimately commenced was against the Thor Defendants in Russia, not against Bennun. (*See* Am. Compl. ¶¶ 52, 72). Bennun could not possibly have had a motive to forestall litigation that had nothing to do with him. Plaintiffs also assert that Bennun had "a desire to avoid repaying the loans used to purchase the Property. (Pl. Mem. at 24). However, the loans were made pursuant to the 2007 Contracts, <u>to which Bennun was not a party</u>.

These are far from the only deficiencies in the pleading. As with North 3rd Development, the pleading is devoid of a single allegation that Bennun ever made a false representation to Plaintiffs. Although Plaintiffs point to eight specific "facts" that are purportedly alleged as to Bennun, none of these identifies a single false statement or omission.[4] (Pl. Mem. at 7). Plaintiffs instead allege that Bennun acted as the attorney to the Thor Defendants and purportedly drafted the 2010 Arrangement (a claim that is demonstrably false, as that agreement is in Russian, a language that Bennun does not speak). However, these allegations are totally irrelevant: to state a claim for fraud, Plaintiffs must allege a false "representation of material fact." *Lerner*, 459 F.3d at 291. They have not done so, nor can they, because Plaintiffs concede that they never spoke to or met with Bennun.

As an alternative theory, Plaintiffs seek to hold Bennun liable for fraudulent concealment, asserting that he failed to disclose his clients' purported intent to short sell the Williamsburg Property. However, there is no basis for Plaintiffs' assertion that Bennun had a duty to violate the attorney-client privilege to disclose his clients' purported intent to Plaintiffs, whom he had

---

[4] To the extent that Plaintiffs suggest that the false statement was made in the 2010 Arrangement, that argument would not support a claim for fraud, because Plaintiffs do not dispute that Bennun is not a party to the 2010 Arrangement. Moreover, "New York law states clearly that an allegation that the defendant made the agreement knowing that he or she would not abide by it says nothing which is not legally embraced by a cause of action for breach of contract." *Vista Co. v. Columbia Pictures Indus., Inc.*, 725 F. Supp. 1286, 1294 (S.D.N.Y. 1989). Of course, no claim for breach of contract can lie against Bennun, who is not a party to the 2010 Arrangement, and Plaintiffs cannot hold liable Bennun for "fraud" based on the Thor Defendants' breach of the 2010 Arrangement.

never met or spoken to. Although Plaintiffs assert that Bennun had a duty to disclose based on his "superior knowledge," this duty "only arises between two parties to a business transaction." *WestRM-W. Risk Markets, Ltd. v. XL Reinsurance Am., Inc.,* 02 CIV. 7344 (MGC), 2006 WL 2034627, at *10 (S.D.N.Y. July 19, 2006). Here, Plaintiffs concede that Bennun was not a party to the 2007 Contracts, the 2010 Arrangement, or any other business transaction with Plaintiffs. Moreover, any attempt to impose liability on Bennun as a third party also fails, because "a third-party duty to disclose has only been found where the third-party to the transaction has had some direct communication with the fraud victim regarding the fraudulent transaction." *Id.*

Plaintiffs make no attempt to distinguish *WestRM*, and fail to cite a single case in which a duty to disclose based on "superior knowledge" was imposed on a non-party to a business transaction. Instead, Plaintiffs make a host of irrelevant factual allegations, essentially asserting that Bennun's purported knowledge alone created a duty to disclose. This novel contention, however, is not the law. Moreover, Plaintiffs make no attempt to explain how, where, or when Bennun, who never met or spoke with Plaintiffs, was supposed to inform them of his client's purported intention with respect to the 2010 Arrangement.

Even more disturbingly, Plaintiffs appear unfazed by the fact that the proffered disclosure obligation would have required Bennun to violate the attorney-client privilege. Indeed, Plaintiffs go one step further, asserting that attorneys have a general "duty to disclose [their clients'] fraud." (Pl. Mem. at 19). This assertion flies in the face of centuries of legal jurisprudence. Contrary to Plaintiffs' outlandish assertion, the law is clear that "professionals such as lawyers and accountants do not have a duty to 'blow the whistle' on their clients. *Calcutti v. SBU, Inc.,* 273 F. Supp. 2d 488, 494 (S.D.N.Y. 2003); *Morin v. Trupin,* 711 F. Supp. 97, 113 (S.D.N.Y.

1989) ("neither lawyers nor accountants are required to tattle on their clients in the absence of some duty to disclose.") (citation omitted).

Plaintiffs' attempt to use the crime-fraud doctrine to create a duty to disclose is misguided. This doctrine cannot create a duty by attorneys to report crimes; rather, it's purpose is merely to ensure that a would-be criminal is not inadvertently aided by the law in carrying out his crime. See *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997). Similarly, the ethics rules and case law cited by Plaintiffs merely prohibit a lawyer from engaging in dishonest or fraudulent conduct, or from assisting his client from engaging in illegal or fraudulent activity. (See Pl. Mem. at 20). None of those authorities create an affirmative duty to disclose, nor could they without stripping the attorney-client privilege of any force or meaning.

Finally, Bennun's alleged failure to disclose his clients' <u>intent</u> is not actionable, because a fraud claim can only be based on a misrepresentation or omission of <u>fact</u>, or in some cases, a present intention not to perform. (*See* Dkt. No. 11 at 18-19). Although Plaintiffs claim that Bennun had a "fraudulent, preconceived, and undisclosed intention of not performing under the 2010 Arrangement" (Pl. Mem. at 21), Bennun is not a party to the 2010 Arrangement, and therefore could not have had a preconceived intent to perform a promise that he never made.

    C.    Plaintiffs' Allegations Against Unspecified "Defendants"
           <u>Do Not State a Claim Against Bennun or North 3rd Development</u>

Aside from those described above, the Amended Complaint contains no further allegations against Bennun or North 3rd Development specifically; rather, it repeatedly references unspecified "defendants." Although Plaintiffs concede that such allegations do not satisfy the requirements of Fed. R. Civ. P. 9(b), they argue that a different standard applies here, because the defendants are all "insiders" or "affiliates." (Pl. Mem. at 15). However, the proposition that fraudulent representations need not be attributed to specific defendants when

2048638-1

6

they are insiders or affiliates applies <u>only in the securities fraud context</u>, not to claims of common law fraud.

Specifically, a "relaxed" pleading standard has been applied in cases where a plaintiff alleged that an offering memorandum or similar document contained false statements. In such cases, courts have rightly found it appropriate to permit the plaintiff to plead fraud against "defendants" generally, because "misstatements or omissions in documents [such as annual reports and financial reports] … may be presumed to entail the collective actions of the directors [and] officers…." *Somerville v. Major Exploration, Inc.,* 576 F. Supp. 902, 911 (S.D.N.Y. 1983); *see also Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986) (complaint's reference to unspecified "defendants" was insufficient to state a claim; sole exception was with respect to allegations that an offering memorandum contained false representations). All of the cases cited by Plaintiffs confirm that this standard is not applied outside of the securities fraud context.

Here, unlike in cases involving false S.E.C. filings or offering statements, there is no basis to lump Bennun or North 3rd Development into the general allegations concerning the 2010 Arrangement or any purportedly false statements made in connection therewith. Moreover, Plaintiffs' attempt to characterize Bennun as an "insider" seriously misunderstands the meaning of that term. An "insider" in this context refers to a corporate insider – a term of art unique to securities fraud cases. In any event, in *Stevens v. Equidyne Extractive Indus. 1980, Petro/Coal Program 1*, 694 F. Supp. 1057, 1062 (S.D.N.Y. 1988), the chief case relied on by Plaintiffs, the court expressly held that because the attorney "in drafting the offering memorandum was acting not on [his] own behalf but on that of the [other] defendants, [he was] not a corporate insider and therefore the relaxed standards of pleading with respect to who said what do not apply." Here,

too, Bennun is alleged to have acted as counsel to the Thor Defendants and drafter of the relevant agreements. He is not, therefore, exempt from the protections of Rule 9(b).

### D. Plaintiffs' Reliance on "Badges of Fraud" Is Misguided and Irrelevant

Plaintiffs also make the bizarre argument that they have somehow satisfied the pleading requirements of Rule 9(b) by pleading the existence of "badges of fraud." However, Plaintiffs seriously misunderstand this legal concept. First, badges of fraud have no application in a case for common law fraud. Rather, they are used exclusively in the fraudulent conveyance context. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (badges of fraud are "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent"). Moreover, the existence of "badges of fraud" cannot remedy the Plaintiffs' utter failure to identify a single misrepresentation or omission of fact. Rather, "badges of fraud" constitute circumstantial evidence that courts may use to infer a different element – intent. *See, e.g., Scantek Med., Inc. v. Sabella*, 583 F. Supp. 2d 477, 497 (S.D.N.Y. 2008).[5]

## II. THE ALTER EGO CLAIMS SHOULD ALSO BE DISMISSED

Plaintiffs' claim to pierce the corporate veil belies their true intent in bringing this lawsuit: to find a deep pocket to make liable for the uncollectable judgments they have against the Thor Defendants. Plaintiffs' attempt, however, to render North 3rd Development and Bennun liable for the Thor Defendants' obligations is unsupported by law or fact.

First, Plaintiffs concede that, in order to pierce the corporate veil, they must establish "complete domination of the corporation." (Pl. Mem. at 27). In support of their efforts to treat Bennun and North 3rd Development as one, Plaintiffs plead a single fact: that Bennun is North

---

[5] Plaintiffs cite only one case in support of their argument that the presence of "badges of fraud" satisfies the Rule 9(b) specificity requirement, *Sullivan v. Kodsi*, 373 F. Supp. 2d 302 (S.D.N.Y. 2005). However, that case similarly deals with fraudulent conveyances and not common law fraud. Moreover, in that case, the "badges of fraud" were used to infer intent, not to eviscerate the requirement that a plaintiff plead a false misrepresentation or omission.

3rd Development's sole owner. Not a single one of the ten factors that courts consider when determining whether complete domination exists is pled: there is no allegation that Bennun disregarded the corporate form, failed to keep adequate books and records, failed to adequately capitalize North 3rd Development, commingled funds, etc. *See Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.,* 622 F. Supp. 2d 46, 53 (S.D.N.Y. 2009). The mere fact that North 3rd Development is a single-member entity is irrelevant. *See, e.g., Long v. AT & T Info. Sys., Inc.,* 733 F. Supp. 188, 207 (S.D.N.Y. 1990) ("the relationship between a parent corporation and its wholly-owned subsidiary is insufficient in itself to pierce the corporate veil.").

Similarly, in support of their attempt to attribute the actions of the Thor Companies to Bennun or North 3rd Development, Plaintiffs allege: (1) that North 3rd Development shares office space with Thor USA; (2) that there is an overlap in ownership between North 3rd Development and the Thor Companies because Bennun has at all times had a direct or indirect ownership interest in the Williamsburg Property; and (3) that Bennun is employed by Thor Capital and Thor Realty, allegedly in Moscow, Russia. (Pl. Mem. at 28).[6]

However, "courts routinely refuse to pierce the corporate veil based on allegations limited to the existence of shared office space or overlapping management...." *Spagnola v. Chubb Corp.,* 264 F.R.D. 76, 87 (S.D.N.Y. 2010); *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.,* 11 CIV. 7511, 2013 WL 1420243, at *13 (S.D.N.Y. Apr. 9, 2013) ("That a subsidiary shares employees, officers, and directors with a parent does not permit the corporate form to be disregarded. Moreover, that Bennun allegedly had a direct or indirect interest in the

---

[6] These allegations are demonstrably false. North 3rd Development does not have offices at 551 Fifth Avenue; its offices are on West 42nd Street. Moreover, Bennun has never been employed by any company in Russia; he resides in New York. Plaintiffs do not allege that the Thor Defendants or North 3rd Development disregarded corporate formalities, were inadequately capitalized, intermingled funds, failed to use discretion, did not have arms' length dealings, were not treated as independent profit centers, paid or guaranteed each others' debts, or intermingled funds.

Williamsburg Property has no bearing on who the owners or managers of these entities were, and does not support the conclusion that there is an overlap in management. Similarly, the mere fact that Bennun allegedly is employed by two non-party entities with the name "Thor" in the title – entities that Plaintiff has never alleged are affiliated with the other defendants – cannot somehow make Bennun liable for the obligations of the Thor Companies, particularly given that Bennun is alleged to be a mere employee of those companies, and not in any control position.

Second, as the Second Circuit has made clear, "the element of domination and control [is not] sufficient of itself to justify the piercing of a corporate veil." *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1053 (2d Cir. 1997). Rather, Plaintiffs must demonstrate that "such domination was used to commit a fraud or wrong." *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997). Here, all that Plaintiffs allege is that Bennun created North 3rd Development months after the alleged fraud took place to purchase the Williamsburg Property. There is nothing improper, let alone fraudulent, about that.[7] Having failed to satisfy either prong, Plaintiffs' veil-piercing claim must be dismissed.

## Conclusion

Defendants North 3rd Development and Abraham Bennun respectfully request that the Court dismiss the Amended Complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

---

[7] Although Plaintiffs assert that Rule 9(b) is inapplicable to their alter ego claim, the fact of the matter is that Plaintiffs' non-existent allegations of how the corporate form was used for a wrongful or fraudulent purpose do not satisfy any pleading standard. Moreover, the case law cited by Plaintiffs provides that, when the claim is based on some non-fraudulent "wrong" attributable to the defendant's complete domination, a plaintiff need not comply with Rule 9(b). *See, e.g., United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 223 (S.D.N.Y. 2002). However, even in that case, the court ultimately applied the 9(b) standard and dismissed the complaint for lack of particularity. Here, Plaintiffs do not assert some non-fraudulent wrong: they specifically assert claims for <u>fraud</u> against all of the defendants and allege that Bennun created North 3rd Development to aid in that fraud. They cannot, therefore, rely on this hypothetical standard, and "the heightened pleading standard of Rule 9(b) is the lens through which those allegations must be examined." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (citations omitted).

Dated: New York, New York
      April 26, 2013

                                  OLSHAN FROME WOLOSKY LLP

                              By:  */s/ Renee M. Zaytsev*
                                   Thomas J. Fleming
                                   Renee M. Zaytsev
                                   *Attorneys for Defendants*
                                   *Abraham Bennun and*
                                   *North 3rd Development, LLC*
                                   Park Avenue Tower
                                   65 East 55th Street
                                   New York, New York 10022
                                   (212) 451-2300

2048638-1