**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CORNWALL MANAGEMENT LTD and OLEG SOLOVIEV a/k/a OLEG VALENTINOVICH SOLOVIEV <br><br>                         Plaintiffs, <br><br>         v. <br><br> THOR UNITED CORP. a/k/a THOR UNITED CORPORATION, JOHN DOE THOR ENTITIES, ATLANT CAPITAL HOLDINGS, LLC, OLEG BATRACHENKO a/k/a OLEG BATRATCHENKO a/k/a O.V. BATRACHENKOV, PETER KAMBOLIN NORTH 3RD DEVELOPMENT, LLC and ABRAHAM BENNUN, <br><br>                       Defendants. | Civil Action No. 12-cv-08551 (LLS) |

## MEMORANDUM OF LAW OF DEFENDANTS ATLANT CAPITAL HOLDINGS, LLC AND PETER KAMBOLIN IN SUPPORT OF THEIR MOTION TO DISMISS

TANNENBAUM HELPERN
SYRACUSE & HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
(212) 508-6700 (phone)
(212) 371-1084 (fax)

*Attorneys for Defendants*
*Atlant Capital Holdings, LLC*
*and Peter Kambolin*

Of Counsel:    Paul D. Sarkozi
                    Zev F. Raben

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES...........................................................................................ii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ..............................................................................................5

ARGUMENT..................................................................................................................10

I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION .......................10

II.     LEGAL STANDARD FOR MOTION TO DISMISS UNDER 12(B)(6).........11

III.    PLAINTIFFS' FRAUD CLAIM MUST BE DISMISSEDAS A MATTER OF LAW
        AGAINST ATLANT AND KAMBOLIN BECAUSE PLAINTIFFS DO NOT AND
        CANNOT PLEAD REASONABLE RELIANCE ...............................................12

IV.     PLAINTIFFS CANNOT PLEAD ANY DAMAGES IN CONNECTION WITH THE
        2010 ARRANGEMENT AND THEREFORE THE FRAUD CLAIM MUST BE
        DISMISSEDAS A MATTER OF LAW AGAINST ATLANT AND KAMBOLIN........13

V.      PLAINTIFFS' ALTER EGO LIABILITY CLAIM FAILS AS A MATTER OF LAW
        AS AGAINST DEFENDANT KAMBOLIN AND ATLANT .........................15

        A.      The Complaint Fails to Plead a Plausible Basis for Kambolin to be the Alter Ego
                of Thor USA ...............................................................................................17

        B.      The Complaint Fails to Plead a Plausible Basis for Kambolin to be Held As The
                Alter Ego of North 3rd...............................................................................18

        C.      The Complaint Fails to Plead a Plausible Basis for Kambolin to be the Alter Ego
                of Atlant......................................................................................................18

CONCLUSION ..............................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*904 Tower Apt. LLC v. Mark Hotel LLC*, 853 F. Supp. 2d 386 (S.D.N.Y. 2012)...................11, 12

*Ashcroft v. Iqbal*, 556 US 662 (2009)..........................................................................11, 18

*Bell Atl. Corp. v. Twombly*, 550 US 544 (2007)........................................................................12

*Capmark Fin. Group Inc. v. Goldman Sachs Credit Partners LP,*
   No. 11 Civ 7511 (RWS) 2013 US Dist. LEXIS 50992 (S.D.N.Y. Apr. 9, 2013) ....................15

*Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489 (22 Cir. 1992) .........................................................14

*Cresswell v. Sullivan & Cromwell,* 922 F.2d 60 (2d Cir. 1990)................................................10, 11

*Cumb. Oil Corp. v. Thropp*, 791 F.2d 1037 (2d Cir. 1986)............................................................14

*Damianos Realty Group, LLC v. Fracchia*, 35 A.D.3d 344 (N.Y. App. Div. 2006) ....................20

*DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405 (S.D.N.Y. 2010)....................16

*DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308 (S.D.N.Y. 2002) .....................................................13

*ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219 (S.D.N.Y. 2008)............................................12

*Eurycleia Partners, LP v. Seward & Kissel, L.L.P.*, 12 N.Y.3d 553 (N.Y. 2009) ........................12

*Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669 (2d Cir. 1995) .....................................................13

*Gouldsbury v. Dan's Supreme Supermarket, Inc.* 154 A.D.2d 509 (N.Y. App. Div. 1989) .........14

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996).....................................................................13

*In re Euginia VI Venture Holdings, Ltd. Litigation*, 649 F. Supp. 2d 105 (S.D.N.Y. 2008).........13

*Jiaxing Hongyu Knitting Co., Ltd. v. Allison Morgan LLC,*
   No. 11 Civ 9342 (AJN) 2013 US Dist. LEXIS 2852 (S.D.N.Y. Jan. 8, 2013) ........................19

*Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111 (2d Cir. 2010) ..................................................16

*Kregos v. Associated Press*, 3 F.3d 656 (2d Cir. 1993).........................................................13, 14

*Morris v. State Dept. of Taxation & Fin.*, 82 N.Y.2d 135 (N.Y. 1993) ........................................16

*Natl. Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224 (S.D.N.Y. 1991) ...................................11

*Ningbo Prods. Imp. & Exp. Co. v. Eliau*, No. 11 Civ 650 (PKC),
   2011 U.S. Dist. LEXIS 125789 (S.D.N.Y. Oct. 31, 2011)................................16, 17, 18, 19, 20

*Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123 (2d Cir. 2009) ...........................................11, 12

*Smith v. Carter*, 545 F.2d 909 (5th Cir. 1977)............................................................................11

*Societe d' Assurance de l'Est SPRL v. Citigroup, Inc.*,
   No. 10 Civ. 4754 (JGK), 2011 US Dist. LEXIS 103375 (S.D.N.Y. Sep. 13, 2011)................15

*State Emples. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71 (2d Cir. 2007) ..........................10

*William Wrigley Jr. Co. v. Waters,* 890 F.2d 594 (2d Cir. 1989)...................................................16

*Wm. Passalacqua Builders v. Resnick Developers S.*, 933 F.2d 131 (2d Cir. 1991).....................17

**Statutes**
28 U.S.C. § 1332 .......................................................................................................10, 11

7 U.S.C. § 25 ...........................................................................................................................10

Federal Rules of Civil Procedure, Rule 12(b)(1)..............................................................1, 10, 20

Federal Rules of Civil Procedure, Rule 12(b)(6)............................................................1, 5, 11, 20

Federal Rules of Civil Procedure, Rule 9(b) .................................................................1, 16, 20

Defendants Atlant Capital Holdings, LLC ("Atlant") and Peter Kambolin ("Kambolin"), by their attorneys, Tannenbaum Helpern Syracuse & Hirschtritt LLP, submit this memorandum of law in support of their motion to dismiss the Amended Complaint ("Complaint") filed by Cornwall Management Ltd. ("Cornwall") and Oleg Soloviev a/k/a Oleg Valentinovich Soloviev, ("Soloviev" and collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

This action represents the third concurrent action in this Courthouse in which the Plaintiffs are seeking redress on account of loans that they allegedly made to Thor United Corp. ("Thor USA") in connection with a plan to develop certain property in the Williamsburg neighborhood of Brooklyn.  The first two actions – *Soloviev v. Thor United Corp.*, 12-cv-8236 (JMF) and *Cornwall Management Ltd. v. Thor United Corp.*, 12-cv-8237 (LTS) – are actions to domesticate and enforce Russian judgments already obtained against Thor USA for the full amount of the unpaid loans – plus interest.  Apparently frustrated that the loans remain unpaid, Plaintiffs are lashing out at any individual or entity that appeared to have any connection to the development and Thor USA, and have cobbled together purported fraud and alter ego theories to attempt to ensnare them in costly litigation.

Plaintiffs' Complaint, however, lacks any basis to proceed against defendants Atlant and Kambolin – both procedurally and substantively – and should, therefore, be dismissed.  First and foremost, Plaintiffs' Complaint may not proceed because this Court lacks subject matter jurisdiction over this action.  Although the Complaint purports to allege alienage jurisdiction on the basis of the diversity between the foreign Plaintiffs and the American defendants, Plaintiffs' own submissions to this Court undermine this claim.  For example, while Plaintiffs allege defendant Oleg Batrachenko is an American citizen who resides in New Jersey, the April 19, 2012 Russian Court decision attached as Exhibit 6 to the Complaint, notably dated *prior* to the

commencement of this action, states that Batrachenko "resides in the jurisdiction of Khamovniki district court of Moscow." Moreover, in another document Plaintiffs have filed in this action, Plaintiffs effectively admit that Batrachenko has maintained his Russian residency – noting that the only place Batrachenko has been seen since the April 19, 2012 Russian judgment has been in Moscow. (Dkt. 24.) Finally, as Peter Kambolin attests, Batrachenko is also a Russian citizen and has been domiciled in Russia since 2005. Based on this record, alienage jurisdiction is not present and the case must be dismissed.

In addition, the Complaint must be dismissed against Atlant and Kambolin because it fails to state a claim. The Complaint first purports to assert a fraud claim against Atlant and Kambolin. Atlant and Kambolin contest that they made any misrepresentation or possessed the requisite scienter, but do not seek dismissal on that ground given the difficulty of challenging the sufficiency of Plaintiffs' self-serving contentions on a motion to dismiss. However, to plead fraud Plaintiffs must also allege **(1) reasonable reliance on the purported misrepresentation and (2) that the alleged misrepresentation directly and proximately caused the loss.** Because Plaintiffs do not and cannot plead these last two elements, the Complaint must be dismissed for failure to state a claim.

To understand why the Complaint fails to allege reasonable reliance or direct and proximate causation, it is important to focus on the 2010 Arrangement that Plaintiffs themselves state constitute the gravamen of their fraud claim.[1] Plaintiffs contend that in 2010, Atlant, through Kambolin, dissuaded Plaintiffs from filing a lawsuit to collect on loans they had made to Thor USA "by persuading plaintiffs to enter into a contract [the 2010 Arrangement] when they did not have the intent of performing it" and "promis[ing] plaintiffs [defendants] would pay them

---

[1] *See* Plaintiffs' Opposition Brief to Defendants Abraham Bennun and North 3rd Development LLC's Motion to Dismiss at 1 ("Pls.' Opp.").

back such monies from the sale proceeds of the Williamsburg Property." (Pls.' Opp. at 1). Plaintiffs contend that this 2010 Arrangement is set forth in Exhibit 1 to the Complaint.

The 2010 Arrangement is a document involving four entities: Cornwall, Atlant, and two parties affiliated with defendant Batrachenko that Plaintiffs have selectively omitted from the Complaint – Thor United Corp. of Nevis ("Thor Nevis") and Thor Real Estate Master Fund Ltd. ("Thor Real Estate Fund"). According to the terms of Exhibit 1, Atlant makes no direct commitment to Cornwall. Rather, Atlant agrees to remit funds realized from the sale of the Williamsburg property to repay loans Atlant owes to Thor Real Estate Fund. Thor Real Estate Fund then agrees to use such funds to redeem shares of Thor Nevis, who in turn agrees to discharge $1.1 million of indebtedness of Thor USA to Cornwall.

The text of Exhibit 1 undermines any possibility that reliance by Cornwall on any purported promise by Atlant was reasonable. First, Atlant, through Kambolin, wrote at the end of the document: "The Party-2 [Atlant] shall not guarantee the successful completion of the [Williamsburg] project and not be held liable before the Party-1 [Cornwall]." In other words, Atlant stated that it had no intention of being directly liable to Cornwall, making any reliance by Cornwall *per se* unreasonable. Moreover, the 2010 Arrangement (Exhibit 1) made it clear that the completion (and thus sale) of the Williamsburg project was uncertain and that Atlant would not and did not guarantee the project would generate funds. Against this background, Cornwall could not reasonably rely on a sale for repayment.

Plaintiffs also do not and cannot plead that the 2010 Arrangement was a direct and proximate cause of their loss. Plaintiffs had loaned funds to Thor USA almost three years before the 2010 Arrangement was executed and there was nothing in the 2010 Arrangement that is alleged to have diminished their rights under their 2007 loan arrangements with Thor USA.

Although the Complaint asserts Plaintiffs delayed bringing a lawsuit as a result of the 2010 Arrangement, Plaintiffs do not allege that any such delay directly and proximately caused a loss. To the contrary, the allegations of the Complaint and the Exhibits indicate that delay caused no harm.  Plaintiffs allege in paragraph 70 of the Complaint that "Defendants have sufficient, immediately available funds to repay plaintiffs' [sic] their loans."  There is no allegation that Thor USA is bankrupt; to the contrary, Exhibits 3-6 to the Complaint indicate that Thor USA and Batrachenko appeared to aggressively defend and appeal Plaintiffs' claims in the Russian actions.  Moreover, according to Plaintiffs' own pleading, the September 10, 2007 Cornwall loan did not even expire until June 10, 2011 and Plaintiffs do not allege that they had a basis to sue to enforce the loan prior to that time; thus even if alleged misrepresentations induced Plaintiffs to defer suit from July 2010 until sometime in 2011, they did not act to their detriment or suffer damage because they do not allege they had grounds to sue prior to that time.  Therefore, as a matter of law, the fraud claim must be dismissed.

Finally, in addition to their defective fraud claim, Plaintiffs attempt to assert a claim for declaratory relief against Kambolin on the grounds that he is purportedly an alter ego of the entity defendants – most significantly judgment debtor Thor USA.  As set forth in more detail below, Plaintiffs' conclusory allegations of alter ego do not suffice.  Plaintiffs fail to make allegations sufficient to establish a plausible basis for the conclusion that Kambolin so controlled or dominated any of the entity defendants, or abused the corporate form, and that such domination was used to commit a fraud or wrong against the plaintiffs which resulted in their injury that he should be held liable for the conduct of any of the entities.  Indeed, the allegations are no different here than would apply to any employee or agent.  While Kambolin allegedly formed Atlant and signed on its behalf, there are no allegations of the intermingling of corporate

and personal funds by Kambolin, undercapitalization of any of the entity defendants, and a failure to maintain separate books and records or other formal legal requirements for the companies. As to Thor USA, Kambolin allegedly provided certain materials to Plaintiffs on its behalf, but there are even fewer allegations to support control and domination. For example, there are no allegations that Kambolin used Thor USA's assets for personal purposes, or that there was a complete absence of any corporate formalities. To the contrary, the Complaint alleges that Batrachenko signed both of the 2007 loan agreements on behalf of Thor USA, and signed the 2010 Arrangement on behalf of Thor USA, as its president. And the Complaint offers no allegations that Kambolin treated Thor USA like a shell or a "dummy" corporation. Lastly, there are no allegations other than a conclusory statement that Kambolin controlled North 3rd. There are no allegations setting forth the purported basis of a theory that Kambolin dominated North 3rd, used North 3rd's assets for his own purposes, or even had any interest in North 3rd whatsoever. In fact, the complaint alleges that Kambolin specifically agreed not to hold any interest in North 3rd following the sale of the Williamsburg property by Atlant.

Accordingly, the Complaint against Atlant and Kambolin should be dismissed in its entirety and with prejudice.

## STATEMENT OF FACTS[2]

<u>The Parties</u>

Plaintiffs here are both foreign. Cornwall is a Nevis corporation with its principal place of business in Charlestown, Nevis, and Mr. Soloviev is a Russian citizen who currently resides in Moscow, Russia. (*See* Plaintiffs' Amended Complaint at ¶¶ 9, 10, hereinafter "Am. Compl.")

---

[2] Except where noted, the Statement of Facts is based on the allegations set forth in the Complaint, many of which Atlant and Kambolin contest, but which the Court is constrained to consider on a Rule 12(b)(6) motion.

Although Defendant Oleg Batrachenko is alleged to be a United States citizen residing in New Jersey (Am. Compl. ¶ 14), the documents attached to the Complaint indicate that, in fact, he resides in Moscow.  (Batrachenko "resides in the jurisdiction of Khamovniki district court of Moscow." *See* Ex. 6 to Am. Compl. at 4).  Moreover, other averments Plaintiffs have made in this action indicate Batrachenko has maintained his Russian residency. (*See* Declaration of Cherish A. Thompson Esq. in Support of Motion to Authorize Alternative Service on Defendant, Oleg Batrachenko at ¶ 7) (Dkt. 24) ("As recent as December 24, 2012, Batrachenko was seen at Thor USA headquarters in Moscow at Malaya Pirogovskaya Street 18, office 201, Moscow, Russia.  On December 25, 2012, at the demand of a Moscow Arbitration Court usher, Batrachenko appeared in Moscow Arbitration Court, Bolshaya Tulskaya Street #17, Moscow, Russia 115191.")  Finally, according to the Declaration of Peter Kambolin in Support of Defendants' Motion to Dismiss ("Kambolin Decl."), Mr. Batrachenko has resided in Russia since 2005.  (Kambolin Decl. at ¶ 4.)

Batrachenko is alleged to be the co-founder and principal of defendant Thor USA, a New York corporation.  (Am. Compl. ¶¶ 11, 14.)  Atlant is a Delaware limited liability company with its principal place of business in New York, New York.  (Am. Compl. ¶ 13.)  North 3rd Development LLC ("North 3rd") is a New York limited liability company with it principal place of business in New York, New York.  (Am. Compl. ¶ 16.)  Peter Kambolin is a United States citizen who resides in New York, New York, and Abraham Bennun ("Bennun") also resides in New York, New York.  (Am. Compl. ¶¶ 15, 17.)

The 2007 Loans to Thor USA

On September 10, 2007, Thor USA entered into a $1.1 million loan agreement with Cornwall, which was to be repaid at 14% interest per annum on June 10, 2011 (the "Cornwall

Loan"). (Am. Compl. ¶ 37.)  Cornwall transferred $1.1 million to Thor USA through Thor Nevis. (Am. Compl. ¶ 38.)  Then, on September 12, 2007, Thor USA, represented by Batrachenko, entered into a second loan agreement with Soloviev for a term of three years with interest accruing at 14% annually (the "Soloviev Loan," and, collectively with the Cornwall Loan, the "2007 Loans").  (Am. Compl. ¶¶ 39, 40.)  Soloviev delivered $1.1 million in connection with the Soloviev Loan to Batrachenko in a suitcase full of cash in Moscow, Russia.  (Am. Compl. ¶¶ 41, 42.)  The 2007 loan proceeds were earmarked to be used in connection with the development of certain real property located in Williamsburg, Brooklyn (the "Williamsburg Property"), though the Complaint does not allege that Plaintiffs sought or were given any security interest in the Williamsburg Property.  (Am. Compl. ¶¶ 37, 40.)

Thor USA made interest payments to Cornwall and Soloviev at various times from December 2007 through November 2010.  (Am. Compl. ¶¶ 46, 47.)  Thor USA paid $181,399.50 to Cornwall on the Cornwall Loan and $211,143.00 to Soloviev on the Soloviev Loan.  (Am. Compl. ¶¶ 46, 47.)

The July 2010 Arrangement

In July 2010, defendants, through Kambolin and Batrachenko, allegedly proposed that Plaintiffs extend the 2007 Loans for a period of one year so as to avoid any lawsuit that might affect the value of the Williamsburg Property.  (Am. Compl. ¶ 52.)  On or about July 20, 2010, the 2010 Arrangement was executed.  (Ex. 1 to Am. Compl.)  The Complaint alleges, "On July 20, 2010, plaintiffs and defendants Thor United Corp., Atlant, Batrachenko, and Kambolin entered into an arrangement under which Kambolin, on behalf of himself and the other defendants, agreed to repay the funds owing to plaintiffs under the 2007 Contracts from the gross sale proceeds of the Williamsburg Property, and in exchange plaintiffs agreed to postpone

prosecuting legal actions to enforce their rights under the 2007 Contracts to be repaid the monies due them under the 2007 Contracts." (Am. Compl. ¶ 58.)

Notably, however, the 2010 Arrangement that Plaintiffs attach to the Complaint as Exhibit 1 contains no provisions that requires Plaintiffs to postpone legal actions, nor do they allege that Thor USA was even in a position to bring a lawsuit to compel payment on the 2007 Loan that was the subject of the 2010 Arrangement. To the contrary, the allegations in the Complaint and the text of the 2010 Arrangement establish that almost a year remained on the Cornwall loan referenced in the 2010 Arrangement: The 2010 Arrangement refers only to the September 10, 2007 Cornwall loan. (*See* Ex. 1 to Am. Comp. at 1 ("The Party-4 [Thor United Corp.] is indebted to the Party-1 [Cornwall] on Loan Agreement No. 040589 *dated September 10, 2007* ...") (emphasis added)). Paragraph 37 of the Complaint states, "On September 10, 2007, Thor USA entered into a contract numbered, no. 040589, in favor of plaintiff Cornwall wherein Cornwall would loan monies to Thor USA until *June 10, 2011* . . ." (Am. Compl. ¶ 37 (emphasis added)) – almost a year after the July 20, 2010 Arrangement.

The July 2010 Arrangement involved four entities, Cornwall, Atlant, the Thor Real Estate Fund, and Thor Nevis. (Ex. 1 to Am. Compl.) Soloviev signed as President of Cornwall, Batrachenko signed on behalf of both Thor parties, and Kambolin signed in his role as Director of Atlant. *Id.* The 2010 Arrangement provided that Atlant would send $1.1 million raised in the realization of the sale of the first phase of the Williamsburg Property to discharge indebtedness to the Thor Real Estate Fund. (*Id.* at 1.) The document also provided that Atlant would not pay additional funds to the Thor Real Estate Fund before such time that Thor Nevis paid the $1.1 million owed by Thor USA to Cornwall under the Cornwall 2007 Loan. *Id.*

8

Significantly, the 2010 Arrangement expressly stated, "The Party-2 [Atlant] shall not guarantee the successful completion of the [Williamsburg] project and not be held liable before the Party-1 [Cornwall]." *Id.*

The Sale of the Williamsburg Property

Four months later, in November 2010, the Williamsburg Property was sold at a loss. (Am. Compl ¶ 91.) Atlant and Kambolin warrantied that they had not received, or will not receive, any consideration in connection with the sale of the Williamsburg Property, nor would they acquire any direct or indirect ownership and/or beneficial interest in the Williamsburg Property. (Am. Compl. ¶¶ 63, 65.) According to the Complaint, Defendants, Bennun, and North 3rd, not Atlant or Kambolin, retain complete control of the Williamsburg Property. (Am. Compl. ¶ 68.)

Plaintiffs Obtain Judgments Against Thor USA in Russia

In November of 2011, Soloviev brought an action against Thor USA seeking to enforce its rights under the Soloviev Loan in the Khamnovniki District Court in Moscow, Russia. (Am. Compl. ¶ 118.) On April 19, 2012, the Russian court entered a judgment in favor of Soloviev against Thor USA in the amount of $1.3 million. (Ex. 5. to Am. Coml.) Thor USA, the only defendant in that action, appealed the judgment, but it was upheld on appeal. (Ex. 6 to Am. Compl.) Soloviev is currently seeking to enforce that foreign judgment in the Southern District of New York, in an action bearing index number 12-cv-8237.

In December 2011, Cornwall filed a cause of action against Thor USA for breach of the Cornwall Loan in the Moscow Arbitral Court, in Moscow, Russia. That court entered judgment in favor of Cornwall against Thor USA in the amount of $1.9 million. (Ex. 3 to Am. Compl.) Thor USA appealed that decision, but it was upheld on appeal. (Ex. 4. to Am. Compl.)

Cornwall is currently seeking to enforce that foreign judgment in the Southern District of New York, in an action bearing index number 12-cv-8236.

## ARGUMENT

## I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION

This court lacks subject matter jurisdiction to hear this dispute since one of the indispensable defendants, Oleg Batrachenko, although a United States citizen, permanently resides in Moscow, Russia.  Plaintiffs claim that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a), which "gives the district courts jurisdiction . . . over cases between 'citizens of a State' and 'citizens or subjects of a foreign State.'" *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 68 (2d Cir. 1990) (quoting 28 U.S.C. § 1332 (a)).[3]  Plaintiffs are a foreign corporation and a foreign individual respectively, and are alleging that each defendant is a citizen of a State.

However, in order for that provision of 28 U.S.C. § 1332 (a) to be an effective basis for diversity jurisdiction, *all* of the defendants must be "citizens of a State." *Cresswell,* 922 F.2d 60, 68.  On a 12(b)(1) motion this Court may properly consider evidence beyond the face of the pleading.  *State Emples. Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 77 n. 4 (2d Cir. 2007) ("in adjudicating a motion to dismiss for lack of subject-matter jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits.")  Based on the Complaint and the record on this motion, Defendant Oleg Batrachenko does not qualify as a "citizen of a State."

"United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and § 1332(a) does not provide that the

---

[3] Plaintiffs assert jurisdiction in this Court pursuant to 7 U.S.C. § 25 (c), but they fail to plead any cause of action under the Commodity Exchange Act, and therefore this is not a proper basis for jurisdiction in this Court.

courts have jurisdiction over a suit to which such persons are parties." *Cresswell*, 922 F.2d 60,

68. This is exactly the scenario present in this action. Since 2005, Mr. Batrachenko, an

American citizen, has permanently resided in Moscow, Russia with his wife and family. (*See*

Kambolin Decl. ¶¶ 2-5.) Courts in this circuit apply the "'totality of the evidence' approach . . .

and no single factor is conclusive, although the residence of a married person's spouse and

children (if the couple has not separated) is given considerable weight." *Natl. Artists Mgmt. Co.*

*v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991). In addition, Plaintiffs' counsel has

admitted that Mr. Batrachenko was seen twice in the last few months in Moscow, Russia.[4] (*See*

Thompson Decl. ¶ 7.) Mr. Batrachenko's foreign domicile is further supported by the findings of

the Russian court, which held that he resides in the jurisdiction of Khamovniki, district court of

Moscow. (*See* Ex. 6 to Am. Compl. at 4.) Therefore, since "the language of § 1332(a) is

specific and requires the conclusion that a suit by or against United States citizens domiciled

abroad may not be premised on diversity," this Court lacks subject matter jurisdiction and

dismissal is required. *Cresswell*, 922 F.2d at 68 (*citing Smith v. Carter*, 545 F.2d 909 (5th Cir.),

*cert. denied*, 431 US 955 (1977)).

## II.    LEGAL STANDARD FOR MOTION TO DISMISS UNDER 12(B)(6)

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a pleading to state

a claim upon which relief may be granted. "When reviewing a motion to dismiss, a court must

accept as true all of the factual allegations set out in plaintiff's complaint, draw all inferences

from those allegations in the light most favorable to plaintiff, and construe the complaint

---

[4] Indeed, in seeking to serve Batrachenko by email, Plaintiffs' counsel has cited for this court similar efforts to serve Batrachenko in yet another action in the Southern District of New York. Notably, in that case, plaintiffs' counsel declared under the penalties of perjury that "[t]o the best of plaintiffs' knowledge and information, defendant Batrachenko no longer resides at his last-known U.S. address . . . and has for several years been residing in Moscow, Russia." *See* Ex A to the Declaration of Paul D. Sarkozi in Support of Defendants' Motion to Dismiss (attaching a copy of Elena A. Agarkova's declaration in connection with *Starshinova et al. v. Oleg Batrachenko et al.* 11 Civ. 09498 in the Southern District of New York).

liberally." *904 Tower Apt. LLC v. Mark Hotel LLC*, 853 F. Supp. 2d 386, 391-392 (S.D.N.Y. 2012) (*quoting Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 US 544, 570 (2007)). Failure to allege all of the elements of a claim requires dismissal. *See ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 225 (S.D.N.Y. 2008) (internal citations omitted).

### III.   PLAINTIFFS' FRAUD CLAIM MUST BE DISMISSED AS A MATTER OF LAW AGAINST ATLANT AND KAMBOLIN BECAUSE PLAINTIFFS DO NOT AND CANNOT PLEAD REASONABLE RELIANCE

Plaintiffs' fraud claim must be dismissed as a matter of law because the Complaint does not and cannot allege that Plaintiffs reasonably relied on the alleged misrepresentation, purportedly set forth in the 2010 Arrangement, that Atlant and Kambolin would repay the 2007 Loans through the sale of the Williamsburg Property. In order to plead a fraud claim under New York law a plaintiff must plead "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, L.L.P.*, 12 N.Y.3d 553, 559 (N.Y. 2009). As will be demonstrated below, Plaintiffs cannot plead reasonable reliance as a matter of law since the document that is at the center of their fraud claim expressly disclaims any such reliance.

As Plaintiffs acknowledge, the gravamen of Plaintiffs' fraud claim is that at the time that the parties entered into the 2010 Arrangement, defendants concealed their preparations to sell the Williamsburg Property at a loss. (Am. Compl. ¶¶ 54, 125; Pls.' Opp. at 1.) Plaintiffs allege that their arrangement not to sue was provided in exchange for the assurances that their 2007 Loans would be paid from the sale of the Williamsburg Property. (Am. Compl. ¶ 58.)

The express terms of the 2010 Agreement provided that Atlant shall not guarantee the successful completion of the project, and not be held liable to Cornwall, and the document was signed by Soloviev on behalf of Cornwall. (Ex. 1 to Am. Compl.)  However, that is exactly what Plaintiffs are seeking to do in this action.  Plaintiffs' fraud claim fails since it was unreasonable, as a matter of law, for Plaintiffs to have relied on the alleged oral misrepresentations in connection with the 2010 Arrangement when the signed document contained explicit language to the contrary. *See DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 319 (S.D.N.Y. 2002) *quoting Harsco Corp. v. Segui*, 91 F.3d 337, 345 (2d Cir. 1996) ("A party to a contract cannot allege that it reasonably relied on a parol representation when, in the same contract, it 'specifically disclaims reliance upon [that] particular representation.'")  When there is a dispute between an allegation in the Complaint and the exhibit that is made a part of the complaint, the exhibit's text shall be controlling. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995).  The plain language of the 2010 Arrangement expressly disclaims what Plaintiffs are alleging here, and that is fatal to their fraud claim.  Thus, the fraud claim should be dismissed as against Kambolin and Atlant.

## IV.  PLAINTIFFS CANNOT PLEAD ANY DAMAGES IN CONNECTION WITH THE 2010 ARRANGEMENT AND THEREFORE THE FRAUD CLAIM MUST BE DISMISSED AS A MATTER OF LAW AGAINST ATLANT AND KAMBOLIN

Plaintiffs' fraud claim also fails since they do not, and cannot, allege how the 2010 Arrangement directly and proximately caused them damages.  Plaintiffs allege that their damages stem from the fact that they "would have commenced earlier legal actions to recover their monies" if not for the alleged fraud. (Am. Compl. ¶ 128.)  New York adheres to the "out of pocket" rule in connection with fraud damages and under the "out of pocket" rule "[t]hose losses must be the direct, immediate, and proximate result of the misrepresentation, [and] [t]he damages must also be independent of other causes." *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir.

1993) (internal citations omitted); *see also In re Euginia VI Venture Holdings, Ltd. Litigation*, 649 F. Supp. 2d 105, 121 (S.D.N.Y. 2008). Plaintiffs' Complaint falls short of that showing.

Plaintiffs' allege that absent the 2010 Arrangement they would have commenced earlier legal action, which would have somehow enabled them to recover their debt owed under the 2007 Loans with Thor USA. However, prior to the 2010 Arrangement, Plaintiffs' do not allege that they had some secured interest in the Williamsburg Property, and the 2010 Arrangement did nothing to change their legal relationship to the Williamsburg Property. (*See* Ex. 1 to Am. Compl.) "Under New York law, an 'injury is proximately caused if it is the natural and probable consequence of the defrauder's misrepresentation or if the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud.'" *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (22 Cir. 1992) (*quoting Cumb. Oil Corp. v. Thropp*, 791 F.2d 1037, 1044 (2d Cir.), *cert. denied*, 479 US 950 (1986)). Plaintiffs' claim to the success of any earlier legal actions is speculative at best, and under New York law, those damage are too remote, and courts "are not permitted to speculate what potential award [Plaintiffs] might have obtained from winning" a case. *Kregos*, 3 F.3d at 665; *see also Gouldsbury v. Dan's Supreme Supermarket, Inc.* 154 A.D.2d 509 (N.Y. App. Div. 1989).

Moreover, as set forth above, the 2010 Arrangement, set forth in Exhibit 1 to the Complaint, contains no reference whatsoever to any prohibition on Plaintiffs bringing a suit. Furthermore, the Complaint identifies no right to sue that Plaintiff surrendered; the Cornwall Loan extended until June 10, 2011, almost a year after the 2010 Arrangement was entered into in July 2010. Consequently, even if Plaintiffs gave up a hypothetical right to sue for a year as a result of the alleged misrepresentation, they did not act to their detriment because no cause of action existed.

Finally, even if the alleged misrepresentations caused Plaintiffs to delay in commencing a lawsuit to force repayment under the 2007 Loans, plaintiffs do not offer a single allegation to indicate how such a delay caused them any damages. Assuming they had a right to sue in 2010, Plaintiffs would have been able to bring an action to get a judgment that Thor USA owed them the unpaid amounts under the 2007 Loans plus interest. The suit would not guarantee repayment; any judgment would have to be enforced.

That is exactly the position Plaintiffs find themselves in today. They have obtained the same judgment that they purportedly were induced to delay seeking. Now, as then, they still need to seek enforcement against Thor USA and that is exactly what Plaintiffs are doing in the two other actions they have brought in this Courthouse – *Soloviev v. Thor United Corp.*, 12-cv-8236 (JMF) and *Cornwall Management Ltd. v. Thor United Corp.*, 12-cv-8237 (LTS). Plaintiffs do not allege that Thor USA is bankrupt. Indeed, Plaintiffs allege in paragraph 70 of the Complaint that "Defendants have sufficient, immediately available funds to repay plaintiffs' [sic] their loans." Furthermore, Exhibits 3-6 to the Complaint indicate that Thor USA and Batrachenko appeared to aggressively defend and appeal Plaintiffs' claims in the Russian actions, thus suggesting that both have assets. Thus, Plaintiffs cannot plead any damages under their fraud claim against Kambolin or Atlant, and the claim must be dismissed.

## V. PLAINTIFFS' ALTER EGO LIABILITY CLAIM FAILS AS A MATTER OF LAW AS AGAINST DEFENDANT KAMBOLIN AND ATLANT

Courts have repeatedly held that "the standard for veil-piercing is very demanding." *Capmark Fin. Group Inc. v. Goldman Sachs Credit Partners LP*, No. 11 Civ. 7511 (RWS), 2013 US Dist. LEXIS 50992, at * 24 (S.D.N.Y. Apr. 9, 2013). Thus, disregarding "the corporate form is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Id. (quoting Societe d' Assurance de l'Est*

*SPRL v. Citigroup, Inc.*, No. 10 Civ. 4754 (JGK), 2011 US Dist. LEXIS 103375, at *5 (S.D.N.Y.

Sep. 13, 2011)). "The unadorned invocation of dominion and control is simply not enough to

state a claim premised on veil piercing." *Id.* (internal citations and quotations omitted).

> A party seeking to pierce the corporate veil and hold an individual
> liable for the debts of a corporation must satisfy a two-part test by
> showing: (1) that the owners exercised complete domination of the
> corporation in respect to the transaction attacked; and (2) that such
> domination was used to commit a fraud or wrong against the
> plaintiff which resulted in plaintiff's injury.

*Ningbo Prods. Imp. & Exp. Co. v. Eliau*, No. 11 Civ. 650 (PKC), 2011 U.S. Dist. LEXIS

125789, at *14-15 (S.D.N.Y. Oct. 31, 2011) (*quoting Morris v. State Dept. of Taxation & Fin.*,

82 N.Y.2d 135, 141 (N.Y. 1993) (internal quotations omitted). "[A] plaintiff . . . must plausibly

allege both elements" in order to avoid dismissal of its alter ego claim seeking to pierce the

corporate veil. *Id.* at *15, *18 (*citing DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp.

2d 405, 432 (S.D.N.Y. 2010)).

Courts making this determination consider factors such as "(1) the intermingling of

corporate and personal funds, (2) undercapitalization of the corporation, and (3) failure to

maintain separate books and records or other formal legal requirements for the corporation."

*William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600-01 (2d Cir. 1989) (internal citations

omitted). Other factors such as "failure to pay dividends, insolvency at the time of a transaction,

siphoning of corporate funds by the dominant shareholder and nonfunctioning of other officers

and directors, either individually or in combination," have also been considered in making this

inquiry. *Id.* at 601; *see also Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111, 195 (2d Cir. 2010).

While "the basic pleading standard of Rule 8," applies to allegations concerning the

"domination element" of the two-part test, allegations concerning the defendant's fraudulent acts

"are subject to the heightened pleading standard of Rule 9(b)." *Ningbo Prods. Imp. & Exp. Co.*,

2011 U.S. Dist. LEXIS 125789, at *16-17 (*quoting Wm. Passalacqua Builders v. Resnick Developers S.*, 933 F.2d 131, 139 (2d Cir. 1991)). When a plaintiff "seeks to pierce the corporate veil based on allegations of fraud, the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be examined." *Id.* at *17 (internal citations and quotations omitted). Therefore, conclusory allegations cannot suffice to state a claim based on alter-ego liability under either pleading standard. *Id.*

> A.   The Complaint Fails to Plead a Plausible Basis for Kambolin to be the Alter Ego of Thor USA

Other than their conclusory allegations, Plaintiffs have utterly failed to plead that alter ego veil piercing is warranted in this case. There are no allegations that Kambolin used Thor USA's cash for his own personal purposes, that Kambolin used Thor USA as a shell to protect himself from liability, or that Thor USA had inadequate capitalization. Further, Plaintiffs fail to plausibly allege any basis for the conclusion that Kambolin dominated Thor USA in any respect. While there are certain allegations in the Complaint that Kambolin acted on behalf of Thor USA in making certain alleged misrepresentations, those allegations fall short of the establishing any of the factors set forth above.

Indeed, the Complaint's allegations suggest that Mr. Batrachenko played a much more central role in Thor USA. Mr. Batrachenko signed both of the 2007 loan agreements on behalf of Thor USA, and signed the 2010 Arrangement on behalf of the Thor Real Estate Fund and Thor Nevis. (*See* Ex. 1 to Am. Compl.) In fact, when the actions were commenced by Plaintiffs to recover under their 2007 Loans in Russia, Thor USA, through Mr. Batrachenko defended those actions. (Exs. 3-6 to Am. Compl.) Kambolin was not made a party to those proceedings, or alleged to have any obligations in connection with the 2007 Loans between Cornwall, Soloviev and Thor USA. Thus, Plaintiffs' alter ego claim is lacking the necessary allegations of

complete domination of Thor USA by Kambolin, and that Thor USA was a mere instrumentality of Kambolin, and cannot survive a motion to dismiss. *See id.* at *18 (dismissing alter ego cause of action where plaintiff had "not plausibly alleged the absence of corporate formalities, [the] use of corporate funds for personal purposes, inadequate capitalization, or any other indicia of abuse of the corporate form.")

B. The Complaint Fails to Plead a Plausible Basis for Kambolin to be Held As The Alter Ego of North 3rd

Plaintiffs' claim that Kambolin should be held to be the alter ego of North 3rd fails for the same reasons as it failed with respect to Thor USA. The Complaint is entirely devoid of any allegations that Kambolin controlled North 3rd, other than a single conclusory allegation. (Am. Compl. ¶ 132.) Plaintiffs do not allege that Kambolin acted on North 3rd's behalf, that he used any of its corporate assets for personal purposes, or that he dealt with North 3rd in any way but at arms length. In fact, the Complaint makes clear that Kambolin signed an agreement preventing him from acquiring any ownership in the Williamsburg Property after it was sold for a loss, and that property is now owned by North 3rd. (Am. Compl. ¶¶ 65, 68.) Therefore, this Court should not declare that North 3rd is the alter ego of Kambolin. *Ningbo Prods. Imp. & Exp. Co.*, 2011 U.S. Dist. LEXIS 125789, at *16-17.

C. The Complaint Fails to Plead a Plausible Basis for Kambolin to be the Alter Ego of Atlant

Finally, Plaintiffs attempt to pierce the corporate veil of Atlant, and hold Kambolin liable for its alleged debts, also fails. Plaintiffs admit that Kambolin created Atlant as a separate and distinct entity in order to implement the Williamsburg Project. (Am. Compl. ¶ 27.) While Plaintiffs later allege that Atlant was formed to fraudulently hinder and delay them from discovering the use of their funds, (Am. Compl. ¶ 75) they set forth no facts that explain how Atlant played that role. They fail to make any allegations that would move their complaint from

possible to plausible, as they must. *Ashcroft*, 556 US at 678. The fact that Atlant, through Mr. Kambolin as its director, entered into the 2010 Arrangement, and made certain representations in connection with that agreement, cannot form the basis for an alter ego cause of action warranting piercing the corporate veil. (Ex. 1 to Am. Compl.) *Ningbo Prods. Imp. & Exp. Co.*, 2011 U.S. Dist. LEXIS 125789, at *16-17.

The analysis in *Jiaxing Hongyu Knitting Co., Ltd. v. Allison Morgan LLC*, No. 11 Civ. 9342 (AJN) 2013 US Dist. LEXIS 2852 at * 22-24 (S.D.N.Y. Jan. 8, 2013) is instructive. There, as here, plaintiffs attempted to rely on the fact that the individual, Eig, acted on behalf of an entity that he had formed. The Court dismissed the alter ego claim:

> The sole allegation in the Complaint that relates to Eig's domination of Allison Morgan is Jiaxing's repeated assertion that Eig "is the principal, owner, and 100% member of his sole proprietary and alter ego of his company, the corporate Defendant Allison Morgan." However, the mere fact that Eig acted as the controlling shareholder of Allison Morgan is insufficient to pierce the corporate veil. Nor do Jiaxing's conclusory assertions that Allison Morgan is Eig's "alter ego" add to this inquiry . . . .
>
> Nor has Jiaxing alleged facts from which the Court could conclude that Eig abused the corporate form to perpetuate a fraud. First, as discussed above, Jiaxing's fraud claim is deficient, both as a substantive matter and because it was not adequately pleaded. Second, even were the Court to deny Defendants' motions on Jiaxing's fraud claim, the facts alleged still do not support the conclusion that the corporate form was in any way used to achieve the fraud — there are no allegations that, for example, that Allison Morgan is undercapitalized and Eig used the corporate form to avoid payment of money owed to Jiaxing.

*Id.* (internal citations omitted).

As in *Jiaxing*, there are no allegations in the Complaint that Kambolin disregarded corporate formalities with respect to Atlant, that Atlant was inadequately capitalized, or that Kambolin used Atlant's property for his own personal purposes. *Id.* As with Thor USA and North 3rd, Plaintiffs' failure to plead these elements requires dismissal of this declaratory

judgment, alter ego, cause of action. "The mere claim that the corporation was dominated by the defendants . . . without more, will not suffice to support the equitable relief of piercing the corporate veil." *See Ningbo Prods. Imp. & Exp. Co.*, 2011 U.S. Dist. LEXIS 125789, at *18 (*quoting Damianos Realty Group, LLC v. Fracchia*, 35 A.D.3d 344, 344 (N.Y. App. Div. 2006)).

## CONCLUSION

For all the foregoing reasons this Court should dismiss this case for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1), or in the alternative, dismiss the amended complaint as to Kambolin and Atlant for failure to state a claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

Dated: New York, New York
  April 26, 2013

       TANNENBAUM HELPERN
       SYRACUSE & HIRSCHTRITT LLP


       By: /s/ Paul D. Sarkozi
          Paul D. Sarkozi
          sarkozi@thsh.com
          Zev F. Raben
          raben@thsh.com
          900 Third Avenue
          New York, New York 10022
          (212) 508-6700

       *Attorneys for Defendants Peter Kambolin*
       *and Atlant Capital Holdings, LLC*